[No. B033153. Second Dist., Div. One. Oct. 11, 1989.]

WHITE MOTOR CORPORATION, Cross-complainant and Appellant, v.
VICTOR TERESINSKI et al., Cross-defendants and Appellants.

Schramm & Raddue, John W. Warnock and Paul J. McMenamin for Cross-complainant and Appellant.

King & Williams, Barbara Kekich, Horvitz, Levy & Amerian, Horvitz & Levy, George P. Schiavelli and Gregory R. Ellis for Cross-defendants and Appellants.

## OPINION

**DEVICH, J.**—Victor Teresinski, individually and doing business as Vic's Auto Sales (collectively Vic's), appeals from the summary judgment entered in favor of White Motor Corporation (White) on its cross-complaint for equitable indemnity. White appeals from the trial court's order denying its request for attorney's fees. We reverse the judgment and dismiss White's appeal as moot.

### BACKGROUND[1]

The underlying facts giving rise to this action are as follows: On October 9, 1980, Ronna Miller rode as a passenger in a friend's Ford Mustang automobile. The friend, who had been drinking alcohol, took part in a drag race against another vehicle. The race ended when the Mustang collided with a garbage truck. Miller was seriously injured.

On June 3, 1981, Frank Lassise, individually, and Carolyn Lassise, individually and as guardian ad litem for Miller (collectively plaintiffs), filed an action for personal injuries against, inter alia, Southern California White Trucks (Southern California), the retailer of the garbage truck; White, the manufacturer of the garbage truck cab and chassis; Maxon Industries, Inc. (Maxon), the fabricator of the garbage truck; and Vic's, the seller of the Mustang.

On June 9, 1982, White filed a cross-complaint for equitable indemnity and declaratory relief against several of the defendants named in plaintiffs' complaint. Vic's was not named as a cross-defendant in White's cross-complaint.[2]

On May 3, 1983, Vic's filed a cross-complaint for equitable indemnity and declaratory relief against several of the defendants named in plaintiffs' complaint, including White.

Although not included in the record on appeal, on October 18, 1983, Southern California filed a cross-complaint for indemnity against, inter alia, Vic's.

On a date not revealed by the record on appeal, White moved for summary judgment against plaintiffs. This motion was granted by the trial court on

---

[1] Several individuals and entities are mentioned in this opinion for purposes of background; only Vic's and White are parties to these appeals.

[2] White added Vic's as a cross-defendant when it filed an amended cross-complaint on June 6, 1985.

October 10, 1984, and a judgment was entered dismissing White from plaintiffs' action. Plaintiffs appealed from this judgment but their appeal was abandoned as part of a settlement agreement whereby White paid plaintiffs $50,000.

Plaintiffs settled with Southern California and proceeded to trial against Vic's alone.[3] By special verdict, the jury found in favor of plaintiffs for $3,250,000 and allocated the comparative negligence 40 percent to Miller and 60 percent to Vic's. On April 12, 1985, the trial court entered a "partial" judgment on the special verdict, reserving jurisdiction to reduce the award by the amount of plaintiffs' settlements with the other defendants and the amount, if any, received by Miller on her claim in the Maxon bankruptcy proceedings.[4]

In June 1985, plaintiffs and Vic's stipulated, inter alia, to set aside the judgment in exchange for a $400,000 settlement payment to plaintiffs. On June 19, 1985, the trial court vacated plaintiffs' judgment against Vic's. Vic's subsequently moved for a determination that its settlement with plaintiffs was made in good faith pursuant to Code of Civil Procedure sections 877 and 877.6[5] and a dismissal of all cross-claims brought against it. On August 20, 1985, the trial court granted this motion and ordered the cross-

---

[3] Maxon declared bankruptcy subsequent to the filing of plaintiffs' complaint. Miller and White filed claims in the bankruptcy proceedings.

[4] In the bankruptcy proceedings, Maxon's insurer interpleaded the $2 million limit of Maxon's policies. On October 26, 1985, the federal court entered its judgment in interpleader distributing the $2 million plus accumulated interest; Miller was awarded $430,000 and White was awarded $111,285.97.

[5] Code of Civil Procedure section 877 provides, in pertinent part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

"....

"(b)   It shall discharge the party to whom it is given from all liability for any contribution to any other parties."

Code of Civil Procedure section 877.6 provides, in relevant part: "(a)   Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors

". . . .

"....

"(c)   A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."

All further statutory references are to the Code of Civil Procedure.

claims against Vic's dismissed.[6] Southern California and White appealed from the order of dismissal.

Finding that a postverdict settlement does not qualify for the protection provided by sections 877 and 877.6 and that the trial court exceeded its jurisdiction when it vacated plaintiffs' judgment against Vic's, this court reversed the order dismissing the cross-claims against Vic's and ordered the trial court "to vacate its June 19, 1985 order vacating the judgment [against Vic's]." (*Southern Cal. White Trucks* v. *Teresinski* (1987) 190 Cal.App.3d 1393, 1408 [236 Cal.Rptr. 159].)

On October 30, 1987, White filed a motion for summary judgment or, in the alternative, summary adjudication of issues on its cross-claim for indemnity against Vic's and sought attorney's fees pursuant to section 1021.6.[7]

On January 2, 1988, finding that the summary judgment White obtained against plaintiffs entitled it to full equitable indemnity from Vic's as a matter of law, the trial court granted White's motion for summary judgment against Vic's for the full amount of White's settlement with plaintiffs ($50,000). The trial court also denied White's request for attorney's fees. An order reflecting the trial court's ruling was filed on February 2, 1988, and a judgment was entered on March 24, 1988. It is from this judgment and this order that Vic's and White appeal.

### ISSUES ON APPEAL

Vic's contends the trial court erred in granting White's motion for summary judgment since triable issues of fact exist as to (1) White's proportionate fault for Miller's injuries and (2) what portion of the funds received by White in the Maxon bankruptcy proceedings is attributable to this action.

White contends the trial court abused its discretion when it denied its request for attorney's fees.

---

[6] Vic's agreed to dismiss its cross-claim for indemnity against White.

[7] Section 1021.6 provides: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the indemnitee through the tort of the indemnitor has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict."

## STANDARD OF REVIEW

■ "Our review of a summary judgment is limited to determining upon a de novo examination whether there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law. [Citations.] If the trial court has erred, either in failing to find a triable issue of fact where there is one, or in failing to apply undisputed facts to a correct principle of law, then the judgment must be reversed." (*Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399, 1401 [239 Cal.Rptr. 916].)

## DISCUSSION

■ Vic's initial contention is that, under *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899], which "permit[s a] concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis," a triable issue of fact exists as to Vic's and White's relative fault.[8]

Relying on various cases, including this court's opinion in *Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc.* (1981) 120 Cal.App.3d 622 [174 Cal.Rptr. 527], White counters Vic's contention with the assertion that, under the doctrine of collateral estoppel, Vic's is bound by the now final summary judgment White obtained in plaintiffs' action against it.[9]

In *Columbus,* while on a cruise, the plaintiffs decided to take a shore excursion in Guatemala. The shore excursion was managed by Columbus Line, Inc. (Columbus). Columbus arranged the excursion with a company associated with Gray Line Sight-Seeing Companies, Inc. (Gray Line). The plaintiffs were injured when the bus provided by Gray Line's associate collided with a truck. The plaintiffs sued several defendants, including Columbus and Gray Line. Columbus filed a cross-complaint for equitable

---

[8] Under *Lyly & Sons Trucking Co.* v. *State of California* (1983) 147 Cal.App.3d 353, 355, 358 [195 Cal.Rptr. 116], where an indemnity action involves less than all of the original defendants due to some of the defendants having entered into good faith settlements with the plaintiff thereby obtaining protection against indemnity, fault must be apportioned among the remaining nonjudgment-proof tortfeasors.

[9] White asserts that Vic's is precluded from challenging the applicability of the collateral estoppel doctrine since it did not raise the issue at the trial level. However, the record reveals that, at the trial level, White argued the final summary judgment finding that it was not liable for Miller's injuries negated the necessity of a trial on the issue of the parties' relative fault. Of course, inherent in such an argument is the notion that Vic's is bound by the summary judgment. Thus, the applicability of the collateral estoppel doctrine is subject to challenge on appeal.

indemnity against Gray Line. Following a hearing in which both the plaintiffs and Columbus appeared, the trial court granted Gray Line's motion for summary judgment in the plaintiffs' action against it. The plaintiffs appealed from this judgment, but the appeal was subsequently abandoned. Gray Line then successfully moved for summary judgment on Columbus's cross-claim against it for equitable indemnity.

In reviewing the judgment, we first discussed the principles of res judicata and collateral estoppel as follows: "The doctrine of res judicata provides that a final judgment on the merits bars the parties or those in privity with them from litigating the same cause of action in a subsequent proceeding and collaterally estops parties or those in privity with them from litigating in a subsequent proceeding on a different cause of action any issue actually litigated and determined in the former proceeding. [Citations.] The application of the doctrine in a given case depends upon an affirmative answer to three questions: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? [Citations.]" (120 Cal.App.3d at pp. 628-629.)

As to the first question, we held that since Gray Line obtained summary judgment against the plaintiffs on the bases that it was neither directly liable for its own negligence nor vicariously liable for the negligence of its associated company, Columbus's cross-complaint for equitable indemnity, also premised on Gray Line's negligence, presented the identical issue.

As to the second question, we held that Gray Line's summary judgment against the plaintiffs was on the merits and had become final.

As to the third question, we noted the Supreme Court's expansion of the concept of privity to include "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and . . . to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel [citations.] [¶] Notwithstanding expanded notions of privity, collateral estoppel may be applied only if due process requirements are satisfied. [Citations.] In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. [Citation.] Thus, in deciding whether to

apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation. [Citation.]" (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].)

We then held that Columbus was in privity with the plaintiffs since both parties had an interest, albeit for different reasons, in establishing Gray Line's liability. We further noted that Gray Line's motion for summary judgment against the plaintiffs "was made on notice to all parties and was served on Columbus as well as [the] plaintiffs. Columbus' attorneys appeared at the hearing on the motion in opposition to it. . . . [I]t was incumbent on Columbus to protect its own interests by vigorously opposing the motion instead of merely relying on [the] plaintiffs' opposition, for Columbus knew (or should have known) that summary judgment exonerating Gray Line from liability to [the] plaintiffs, if it became final, would preclude any claim of indemnity. [Citation.] Columbus had notice of the motion and appeared at the hearing thereon. Its failure to take full advantage of its opportunity to oppose the motion does not warrant refusal to apply collateral estoppel . . . ." (*Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc., supra,* 120 Cal.App.3d at pp. 630-631.)

█ Turning to the facts of the case at bench, as to the first pertinent question (i.e., whether the issue decided in the prior adjudication is identical to the one presented in the instant action), Vic's argues that the summary judgment obtained by White against plaintiffs did not litigate the precise issue of the proportionate fault of Vic's and White. Although Vic's assertion is correct, it ignores the effect of the jury's verdict in plaintiffs' action against it wherein Vic's was found to be 60 percent at fault for Miller's injuries. While not a finding on the issue of relative fault among defendants, if White's summary judgment against plaintiffs (which found, as a matter of law, that White was not liable since any negligence on its part did not proximately cause Miller's injuries) is binding upon Vic's, then by definition White would be entitled to full equitable indemnity as a matter of law. (See *Allis-Chalmers Corp.* v. *Superior Court* (1985) 168 Cal.App.3d 1155, 1159 [214 Cal.Rptr. 615].)

As to the second question (i.e., whether there exists a final judgment on the merits), White's summary judgment against plaintiffs became final upon plaintiffs' abandonment of the appeal therefrom and it constitutes a judgment on the merits. (*Columbus Line, Inc.* v. *Gray Line Sight-Seeing Companies Associated, Inc., supra,* 120 Cal.App.3d at p. 629.) Moreover, regardless

of the propriety of the summary judgment, it is nonetheless binding since "for purposes of application of the doctrine of res judicata, an erroneous judgment is as conclusive as a correct one. [Citations.]" (*Id.,* at p. 629, fn. 5.)

As to the third question (i.e., whether Vic's was in privity with a party to the prior adjudication), we note that although notice of White's motion for summary judgment against plaintiffs was given to Vic's,[10] at the time of White's motion, Vic's was not named as a cross-defendant in White's cross-complaint for equitable indemnity.[11] Under these circumstances, Vic's would have no reason to anticipate that a successful summary judgment motion by White against plaintiffs (thereby dismissing White from plaintiffs' action) would someday be used as a basis for White obtaining indemnity from Vic's. Quite to the contrary, if White were successful in its summary judgment motion, the logical assumption is that White would not pay any funds to plaintiffs and therefore there would be nothing to indemnify.[12]

Since the answer to all three pertinent questions is not in the affirmative, Vic's cannot be collaterally estopped by the determination inherent in White's summary judgment against plaintiffs that White was not liable for Miller's injuries.

Alternatively, even if all three questions were answered affirmatively, we would still hold the doctrine of collateral estoppel inapplicable to the case at bench. ■ It must be remembered that "[c]ollateral estoppel is an equitable concept based on fundamental principles of fairness." (*Sandoval* v. *Superior Court* (1983) 140 Cal.App.3d 932, 941 [190 Cal.Rptr. 29].) Moreover, the offensive use of collateral estoppel is more closely scrutinized than the defensive use of the doctrine. (See *Parklane Hosiery Co.* v. *Shore* (1979) 439 U.S. 322, 329-331 [58 L.Ed.2d 552, 561-562, 99 S.Ct. 645].)

■ In the case at bench, White, armed with a judgment of nonliability, nonetheless settled with plaintiffs for $50,000 in exchange for an abandon-

---

[10] In their briefs, the parties take opposite positions on whether Vic's participated in the hearing on White's motion. The October 10, 1984, minute order does not list Vic's counsel as one of the attorneys appearing that day. However, at oral argument, Vic's appellate counsel indicated that although Vic's trial counsel was present at the October 10, 1984, hearing, she neither filed papers nor otherwise argued against White's motion for summary judgment.

[11] As previously noted, White added Vic's as a cross-defendant when it filed an amended cross-complaint on June 6, 1985, approximately eight months after the trial court granted White's motion for summary judgment against plaintiffs.

[12] White argues that at the time of its motion for summary judgment against plaintiffs, Vic's had a cross-claim against White for equitable indemnity and therefore had an interest in opposing White's motion. Our review of the record indicates that other than service, Vic's cross-complaint for equitable indemnity remained dormant until it was dismissed as part of Vic's motion for a determination that its settlement with plaintiffs was made in good faith.

ment of plaintiffs' appeal from the summary judgment.[13] In this manner, if Vic's were collaterally estopped by the summary judgment, White would have achieved two goals: (1) the judgment finding White not liable for Miller's injuries, whether or not erroneously rendered,[14] would become final and (2) Vic's, the only defendant with a finding of fault against it, would become liable, as a matter of law, on White's cross-claim for equitable indemnity. Most importantly, all of this would occur without any participation by (or representation of) Vic's.

■ This court recognizes that had its summary judgment been reversed on appeal, White was potentially liable to plaintiffs. Therefore its $50,000 settlement should not be deemed a voluntary payment cutting off any right to equitable indemnity. (*Mullin Lumber Co. v. Chandler* (1986) 185 Cal.App.3d 1127, 1134 [230 Cal.Rptr. 122]; *Aetna Life & Cas. Co. v. Ford Motor Co.* (1975) 50 Cal.App.3d 49, 54 [122 Cal.Rptr. 852].) However, it is highly illogical and, more importantly, manifestly inequitable to permit White to take the inconsistent positions that, on the one hand, it faced potential liability should its summary judgment have been reversed and therefore it was not a volunteer, but, on the other hand, the same summary judgment was a final determination that it was not at fault and therefore it was entitled to full equitable indemnity as a matter of law. To affirm such a judgment would increase the potential for collusion and other abuses of the system.[15]

We therefore conclude that a material issue of fact exists as to the proportionate fault of Vic's and any other nonjudgment-proof defendant.[16] Having so found, we need not determine whether a triable issue of fact exists as to what portion, if any, of the funds received by White in the Maxon bankruptcy proceedings is attributable to plaintiffs' action.[17] Finally, in light of our reversal of the summary judgment, White's appeal, which raises the

[13] Unlike the case at bench, we note that nothing in *Columbus* indicates that the plaintiffs abandoned their appeal in exchange for a monetary payment.

[14] At the trial level, addressing the issue of whether the $50,000 payment to plaintiffs was voluntary and therefore not subject to indemnity, White argued that, at the time of the settlement, it faced a threat of reversal since Southern California's motion for summary judgment, premised on grounds similar to those asserted in White's motion, had been denied.

[15] For the same reasons, we reject White's remaining arguments on appeal in support of its position that it is entitled to full equitable indemnity as a matter of law.

[16] Although it is not clear from the record on appeal, it appears that Vic's and White are the only nonjudgment-proof tortfeasors remaining in this action.

[17] Although White made an alternative motion for summary adjudication of issues, thereby permitting this court to test whether the alternative request should have been granted (see *Imperial Cas. and Indemn. Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 186 [243 Cal.Rptr. 639]), we cannot do so as to the Maxon bankruptcy issue since this was not one of the issues specified in the motion as being without substantial controversy (see *Homestead Savings v. Superior Court* (1986) 179 Cal.App.3d 494, 498 [224 Cal.Rptr. 554]).

issue of whether the trial court abused its discretion when it denied attorney's fees, becomes moot and is therefore dismissed.

### DISPOSITION

The summary judgment appealed from is reversed. White Motor Corporation's appeal from the order denying its request for attorney's fees is dismissed as moot. Appellant Victor Teresinski, individually and doing business as Vic's Auto Sales, shall recover costs on appeal.

Spencer, P. J., and Hanson, J., concurred.