[No. B064309. Second Dist., Div. Five. Feb. 17, 1993.]

ROBERT DANIELS et al., Plaintiffs and Appellants, v.
SALVATORE DeSIMONE, Defendant and Respondent.

**COUNSEL**

McCulloch & deMontesquiou and Paul A. deMontesquiou for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, Roy G. Weatherup, Lori R. Behar, Thomas N. Charchut, Holly M. Teel and Maureen Haight Gee for Defendant and Respondent.

**OPINION**

**TURNER, P. J.—**

### I.  INTRODUCTION

Plaintiffs, Robert and Mitzie Jean Daniels, appeal from a summary judgment entered against them in favor of defendant Salvatore DeSimone on an attorney malpractice action. We affirm.

### II.  PROCEDURAL HISTORY

Plaintiffs filed the original complaint on March 3, 1990, and named as defendants Dale D. Billips, the Law Offices of Dale D. Billips, and Patricia

Ramsey.[1] The complaint alleged that defendants negligently failed to timely serve an underlying medical malpractice and loss of consortium action within three years after the action was filed which resulted in a dismissal pursuant to Code of Civil Procedure section 583.210.[2] On April 27, 1990, plaintiffs amended the complaint by designating Mr. DeSimone and the law firm of Billips & DeSimone as fictitiously named defendants pursuant to section 474.

Mr. DeSimone answered the complaint and on August 2, 1991, filed a motion for summary judgment on the grounds that he owed no duty to plaintiffs to serve the complaint because he was never their attorney and that he did not proximately cause plaintiffs' injuries. The trial court granted the motion and entered judgment in favor of Mr. DeSimone from which plaintiffs filed a timely notice of appeal.

### III. Facts

The evidence produced in connection with the summary judgment motion established that on or about February 28, 1979, Mr. DeSimone and Mr. Billips began practicing law as a partnership under the firm name of Billips & DeSimone. On February 13, 1986, Mr. Daniels had a telephone conversation with Mr. DeSimone about a claim for medical malpractice that he wished to pursue. The parties disagree as to whether Mr. Daniels was referred to the partnership or to Mr. DeSimone or Mr. Billips. In opposition to the summary judgment motion, Mr. Daniels declared he "was referred to the firm of Billips & DeSimone by an attorney who declined to represent [him]." Mr. Billips testified at his deposition that an attorney friend of plaintiffs', Hugh Sommers, referred plaintiffs to David Harney who in turn referred plaintiffs to Mr. Billips. However, Mr. Billips did not personally speak to plaintiffs. On March 4, 1986, Ms. Ramsey, who was employed as an associate of the law firm of Billips & DeSimone, wrote a letter to Mr. Daniels confirming the conversation with Mr. DeSimone. Ms. Ramsey advised Mr. Daniels that he should forward copies of his medical records to "us" for review. The letter provided in part: "This is to follow up your telephone conversation of February 13, 1986 with Mr. DeSimone. You indicated to Mr. DeSimone you would have Mr. Slotnick forward the medical records to us for our review. Please do this as soon as possible so we can review this situation and make a determination regarding our representation of you."

---

[1]Neither of these defendants is a party in this appeal. Plaintiffs dismissed Ms. Ramsey from the action on April 10, 1991, in exchange for a waiver of costs and the right to file a malicious prosecution action.

[2]All further statutory references are to the Code of Civil Procedure.

On May 1, 1986, during lunch, Mr. DeSimone and Mr. Billips agreed to terminate the partnership effective the same date. Plaintiffs' opposition to the summary judgment motion indicated upon the dissolution, Mr. Billips and Mr. DeSimone "each went their separate ways." Ms. Ramsey continued to work with Mr. Billips. The terms of the dissolution included an agreement that the partners would split the partnership files and share the proceeds with regard to cases "wherein a suit had been filed." As will be noted, as of May 1, 1986, no suit had yet been filed on behalf of plaintiffs. Mr. Billips testified that as of May 1, 1986, the date of the partnership dissolution, no decision had been made as to whether to file suit on behalf of plaintiffs. The case had been referred directly to Mr. Billips as distinguished from the partnership. If suit were filed, as it was, after the May 1, 1986, dissolution of the partnership, Mr. DeSimone would not recover any of the proceeds of a contingent fee. The contingent fee recovery would have solely belonged to Mr. Billips.

On June 11, 1986, after the termination of the partnership, the Law Offices of Dale D. Billips filed a complaint for personal injuries on behalf of plaintiffs entitled, Daniels v. St. Joseph's Medical Center (Super. Ct. L.A. County, No. NCC029824B). The complaint "was filed to toll the Statute of Limitations." The complaint was signed by Ms. Ramsey on behalf of the Law Offices of Dale D. Billips. After the partnership dissolution, Ms. Ramsey worked exclusively for Mr. Billips and she "handled the entire case" filed on behalf of plaintiffs. In October 1986, the Law Offices of Dale E. Billips filed a "Certificate of Reasonable and Meritorious Cause" in the case which was signed by Mr. Billips. On October 3, 1986, Ms. Ramsey sent a letter to plaintiffs on behalf of the Law Offices of Dale D. Billips. The letter provided: "Pursuant to my conversation of October 2, 1986 with Mr. Daniels, enclosed is a retainer agreement in the above-captioned matter. Please review the agreement and if you have any questions concerning it, we can discuss them at our upcoming meeting." A copy of the unsigned retainer agreement indicated that the Law Offices of Dale D. Billips would be retained to represent plaintiffs.

On June 19, 1987, Mr. Billips became ill and was hospitalized. He went to Stanford University Hospital on November 9, 1987, where he received a heart transplant. He stayed at Stanford until October 12, 1988. He did not go into the office during the entire year of 1988. His condition ultimately led to a complete abandonment of his law practice.

While Mr. Billips was in the hospital, Mr. DeSimone moved out of the office that the two had continued to share for over one and one-half years after the partnership was dissolved. When Mr. DeSimone moved, he put Mr.

Billips's files in storage. Mr. DeSimone sent the bill from the storage company to Mr. Billips each month. Before the partnership was terminated, Mr. DeSimone bought a computer. Ms. Ramsey prepared a diskette for every case that came into the office.When he moved from the offices he had previously shared with Mr. Billips, Mr. DeSimone took the computer diskette which contained information relating to plaintiffs' medical malpractice action. Mr. Billips did not know anything about the Daniels diskette until April 1989. The Daniels's case file was either lost or destroyed; none of the parties knew what happened to it. Mr. Billips testified that he believed that he "signed something a while back where a whole bunch [of files] were destroyed." Mr. Billips did not inventory any of the files before he authorized their destruction.

While Mr. Billips was ill, Mr. DeSimone handled the cases that had belonged to the partnership. Mr. DeSimone did not handle nor was he asked by Mr. Billips to do any legal work on the Daniels's case. Mr. DeSimone never agreed with Mr. Billips or plaintiffs to handle the medical malpractice action. According to Mr. Billips, plaintiffs' case fell "through the cracks."

On April 4, 1989, two months before the three-year statute ran, Mr. Daniels called Mr. Billips to inquire about the medical malpractice action. Mr. Billips advised Mr. Daniels to get another attorney because he was no longer practicing law. The underlying action was subsequently dismissed for lack of service and this suit for legal malpractice followed.

## IV. DISCUSSION

### A. Standard of Review

A motion for summary judgment will be granted if the moving papers establish that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) ■■■ The standard for appellate review of a summary judgment motion was set forth by our Supreme Court as follows: "Summary judgment is a drastic measure that deprives the losing party of a trial on the merits. [Citation.] It should therefore be used with caution, so that it does not become a substitute for trial. [Citation.] The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.[Citation.] [¶] ■■■ A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of the plaintiff's

case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) ▆ An appellate court determines de novo whether there is a genuine issue of material fact and the moving party was entitled to summary judgment as a matter of law. (*Wilson* v. *Blue Cross of So. California* (1990) 222 Cal.App.3d 660, 670 [271 Cal.Rptr. 876].)

## B. *There Are No Triable Issues of Material Fact*

Plaintiffs argue that summary judgment was improper because triable issues of material fact remained as to whether Mr. DeSimone was liable to them for attorney malpractice because the underlying complaint was not served within three years after it was filed. ▆ The elements of a cause of action for attorney malpractice are: (1) the duty to use such skill, prudence, and diligence as other attorneys commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) The Court of Appeal has noted: "[A]n attorney's duty to his or her client depends on the existence of an attorney-client relationship. If that relationship does not exist, the fiduciary duty to a client does not arise. [Citation.] Except for those situations where an attorney is appointed by the court, the attorney-client relationship is created by some form of contract, express or implied, formal or informal. [Citations.]" (*Fox* v. *Pollack* (1986) 181 Cal.App.3d 954, 959 [226 Cal.Rptr. 532].)

▆ Plaintiffs conceded in the trial court and here that at the point Mr. Billips filed the lawsuit Mr. DeSimone owed them no duty.[3] They nevertheless argue that summary judgment was improper because Mr. DeSimone had nonpartnership files moved into a storage facility; Mr. DeSimone forwarded the monthly storage bills to Mr. Billips; and Mr. DeSimone had possession of a computer diskette which had some unidentified information on it

---

[3]At the hearing on the motion, plaintiffs' current attorney, Paul A. deMontesquiou, stated: "As of that point, your honor, no duty was owed by Mr. Sal DeSimone. Why? Because Mr. Billips was active. He was healthy. He was practicing . . . ." Mr. deMontesquiou further stated that he conceded that when the complaint was prepared Mr. DeSimone "owed no duty at that time." Plaintiffs' current attorney's concession was made in light of his commendable recognition that legal representation in connection with one matter does not necessarily translate into a duty to later represent the client. (*Kane, Kane & Kritzer, Inc.* v. *Altagen* (1980) 107 Cal.App.3d 36, 42 [165 Cal.Rptr. 534] [limited representation request and sending a demand letter did not require attorney to later file suit in the absence of grant of authority to do so by client]; *Brandlin* v. *Belcher* (1977) 67 Cal.App.3d 997, 1001 [134 Cal.Rptr. 1] [summary judgment proper when no evidence client and attorney had entered into an agreement concerning a trust amendment].)

concerning plaintiffs' suit which was filed by Mr. Billips. In other words, plaintiffs have admitted that at the point that the complaint was filed on June 11, 1986, they were represented by Mr. Billips but they seek to hold Mr. DeSimone liable for attorney malpractice on the theory that by storing the files and taking possession of the diskette, he undertook to represent them in the underlying action.

■ The test for potential attorney malpractice under these circumstances was described by the Supreme Court as follows: "[T]he determination whether in a specific case [an attorney] will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm." (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 588 [15 Cal.Rptr. 821, 364 P.2d 685].) ■ The question of duty is an " ' "expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." ' [Citation.]" (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 805-806 [205 Cal.Rptr. 842, 685 P.2d 1193].) Whether such a duty exists is initially a question of law and depends upon the balancing of a number of policy considerations for and against the imposition of liability under the particular facts of the case. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].)

■ Application of the above stated factors establishes that Mr. DeSimone owed no duty of representation to plaintiffs. No evidence was presented which established that Mr. DeSimone intended to affect plaintiffs by moving the files into storage during Mr. Billips's illness. The landlord took over the office space that was previously occupied by Mr. Billips. Mr. DeSimone was not acting as an attorney for plaintiffs in moving the files but was simply assisting Mr. Billips in vacating the office. Further, under the totality of the circumstances of the case, it was not foreseeable that plaintiffs would be injured because Mr. DeSimone assisted Mr. Billips in vacating the office. Mr. Billips was at Stanford University Hospital from November 1987 until October 1988. When he returned from Stanford, the action had been pending for a little over two years. Mr. Billips testified that he was receiving a bill from "Bekins" for the storage of his files on a monthly basis; therefore, he was aware that Mr. DeSimone had moved his files. Mr. Billips further testified that he authorized the destruction of some of the files without reviewing them. Moreover, when Mr. Daniels called Mr. Billips, two months remained in the three-year period of limitations in which to serve the

complaint. Under these circumstances, it was not foreseeable that by moving the files into storage, Mr. Billips would completely abandon the case even after his recovery, he would not ask for help from another attorney, or he would permit files to be destroyed without reviewing them.

Further, there is no connection between defendant's conduct and plaintiffs' injury. Mr. Billips filed the complaint in the underlying action two months after the partnership was dissolved and over a year before he became ill. Plaintiffs' present attorney, Mr. deMontesquiou, conceded that, when the complaint was filed, Mr. DeSimone owed plaintiffs no duty of care. ■ To paraphrase the Supreme Court: "An attorney cannot be held liable for failing to [serve] an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action." (*Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 57 [210 Cal.Rptr. 781, 694 P.2d 1153]; accord, *Shelly* v. *Hansen* (1966) 244 Cal.App.2d 210, 213-214 [53 Cal.Rptr. 20], disapproved on another point in *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190, fn. 29 [98 Cal.Rptr. 837, 491 P.2d 421].) ■ Moreover, plaintiffs were injured because their attorney of record failed to serve the action before and after he became ill and not because of Mr. DeSimone's actions in placing the files in storage. Additionally, after the medical malpractice suit was filed, Mr. DeSimone had no authority to represent plaintiffs. Finally, there is no evidence as to Mr. DeSimone's custody of the diskette, other than that he possessed it. Under these circumstances, we conclude the sum total of the considerations of this case do not permit the law to be that plaintiffs should be protected against Mr. DeSimone's action in placing the files in storage so a duty of care should be imposed upon him. In conclusion, because Mr. DeSimone did not owe plaintiffs any duty to serve the complaint, the trial court properly granted the summary judgment motion.

■ Relying upon *Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 816-818 [278 P.2d 91], plaintiffs argue that Mr. DeSimone's actions were a gratuitous undertaking which required him to act to protect them from injury. In *Valdez,* a car dealer was held liable for failing to procure "full coverage insurance" as requested by the plaintiff car purchaser. The contract of sale of the car did not require the dealer to secure the policy. When the car was later involved in an accident, the dealer was held liable for failing to procure the policy. The court held: "It is well established that a person may become liable in tort for negligently failing to perform a voluntarily assumed undertaking even in the absence of a contract so to do. A person may not be required to perform a service for another but he may undertake to do so— called a voluntary undertaking. In such a case the person undertaking to

perform the services is under a duty to exercise due care in performing the voluntarily assumed duty, and a failure to exercise due care is negligence." (*Id.* at p. 817.) The record does not support plaintiffs' claim that a jury could reasonably infer that by moving the files and securing the computer diskette, Mr. DeSimone voluntarily undertook to represent them after their attorney of record became ill. Furthermore, there is no evidence that plaintiffs either knew about Mr. DeSimone's actions or they in any way relied upon him to represent them at any time after the complaint was filed. In most cases, some form of detrimental reliance by a plaintiff on the defendant is an essential element of a voluntary assumption of a duty theory. (See *Aim Insurance Co. v. Culcasi* (1991) 229 Cal.App.3d 209, 216 [280 Cal.Rptr. 766].) The present case is more akin to the decisions in *Morales* v. *Fansler* (1989) 209 Cal.App.3d 1581, 1588-1589 [258 Cal.Rptr. 96], *Gill* v. *Mission Sav. & Loan Assn.* (1965) 236 Cal.App.2d 753, 756-757 [46 Cal.Rptr. 456], *Ulwelling* v. *Crown Coach Corp.* (1962) 206 Cal.App.2d 96, 136-137 [23 Cal.Rptr. 631] and *Luis* v. *Orcutt Town Water Co.* (1962) 204 Cal.App.2d 433, 444-445 [22 Cal.Rptr. 389], where the courts concluded there was no liability, than to *Valdez* and its progeny.

## IV. DISPOSITION

The judgment is affirmed. Defendant Salvatore DeSimone is to recover his costs on appeal jointly and severally from plaintiffs Robert and Mitzie Jean Daniels.

Grignon, J., and DeVanon, J.,* concurred.

---

*Judge of the Municipal Court for the Glendale Judicial District sitting under assignment by the Chairperson of the Judicial Council.