[No. B078773. Second Dist., Div. Five. Aug. 4, 1994.]

FIDELITY MORTGAGE TRUSTEE SERVICE, INC., Plaintiff and Appellant, v.
RIDGEGATE EAST HOMEOWNERS ASSOCIATION et al., Defendants and Respondents.

504

COUNSEL

Friedlandre & Werlin, Leslie M. Werlin and Lloyd K. Chapman for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard and Michael C. Olson for Defendants and Respondents.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Plaintiff, Fidelity Mortgage Trustee Service, Inc.,[1] appeals from a judgment following the grant of the summary issue adjudication motions of defendants, Ridgegate East Homeowners Association (Ridgegate) and Bali Management, Inc. (Bali). In granting the summary issue adjudication motions, the trial court concluded Code of Civil Procedure section 1021.6[2] applied to the facts of this case. We conclude a triable controversy exists as to the application of section 1021.6 to the present case given the showing made in the parties' separate statements of undisputed and disputed facts.

The judgment was entered pursuant to the parties' stipulation after the court, on defendants' summary issue adjudication motions, concluded plaintiff's failure to tender the defense of a third party action to Ridgegate and Bali barred it from recovering, on an implied indemnity theory, the attorney fees it incurred in defending that lawsuit. Plaintiff contends section 1021.6 is inapplicable to a claim for indemnification arising out of an *agency* relationship. We find section 1021.6 applies only when an indemnitee who is

---

[1] At the time of the underlying events, plaintiff was known as Milton S. Katz & Associates, doing business as Condominium Trustee Services.

[2] Code of Civil Procedure section 1021.6 provides: "Upon motion, a court after reviewing the evidence in the principal case may award attorney's fees to a person who prevails on a claim for implied indemnity if the court finds (a) that the *indemnitee through the tort of the indemnitor* has been required to act in the protection of the indemnitee's interest by bringing an action against or defending an action by a third person and (b) if that indemnitor was properly notified of the demand to bring the action or provide the defense and did not avail itself of the opportunity to do so, and (c) that the trier of fact determined that the indemnitee was without fault in the principal case which is the basis for the action in indemnity or that the indemnitee had a final judgment entered in his or her favor granting a summary judgment, a nonsuit, or a directed verdict." (Italics added.)

All further statutory references are to the Code of Civil Procedure unless otherwise noted.

innocent of wrongdoing is required, through the tort of the indemnitor, to bring an action against or defend an action by a third party. Based upon the facts averred to in the parties' separate statements of disputed and undisputed facts, there was a triable controversy as to the application of section 1021.6 to the present case. Therefore, we reverse the judgment and the summary issue adjudication order which concluded plaintiff's claim for attorney fees was barred by section 1021.6 as a matter of law.

## II. BACKGROUND

### A. *The Underlying Action*

Ridgegate was a homeowners association. Bali was a property management company retained by Ridgegate to manage a condominium complex. Alyce Vrba was a condominium owner.[3] In 1987, a lien was recorded against Ms. Vrba's property for delinquent homeowners' fees owed to Ridgegate. Thereafter, Ridgegate, through its board of directors, decided to foreclose on the lien. Bali, as authorized by Ridgegate, retained plaintiff, a professional foreclosure trustee, to conduct the foreclosure. Bali never itself handled foreclosure proceedings; it always hired a professional foreclosure trustee. Plaintiff knew the lien was recorded by Ridgegate and not by Bali.

Following the nonjudicial foreclosure, Ms. Vrba sued plaintiff, Ridgegate, and Bali. She claimed, among other things, that Milton Katz, plaintiff's president, had been negligent and had misrepresented to her the foreclosure proceedings would be delayed. A summary judgment was entered in favor of Bali. The case against Ridgegate and plaintiff was tried by a jury on the questions whether Mr. Katz: had been negligent; had misrepresented to Ms. Vrba the foreclosure sale would be postponed; and had been acting as Ridgegate's agent. The jury found in favor of plaintiff and Ridgegate. The jury specifically found Mr. Katz: had not been negligent; did not make any misrepresentation to Ms. Verba; and was not the agent of Ridgegate. None of the documents submitted in connection with the summary issue adjudication motions suggested Ridgegate or Bali had committed a tort.

### B. *Plaintiff's Indemnification Action*

Plaintiff then filed an action against Ridgegate and Bali seeking reimbursement of $84,000 in attorney fees and costs expended by it to defend

---

[3]The foreclosure proceedings were initiated against Ms. Vrba's father, the owner of record. However, Ms. Vrba had in her possession an unrecorded deed to the condominium transferring title from her father to her.

Ms. Vrba's action.[4] Plaintiff alleged, as far as is material to this appeal, that Ridgegate and Bali had acted as the agents of each other; they "requested" that plaintiff act as a nonjudicial foreclosure trustee; and plaintiff was entitled to indemnification as the agent of Ridgegate and Bali. Plaintiff never alleged Ridgegate or Bali committed a tort against Ms. Vrba. Motions for summary judgment or summary issue adjudication were brought by Ridgegate and Bali.

## C.   *The Summary Judgment or Summary Issue Adjudication Motions*

Bali sought summary adjudication that plaintiff's cause of action for implied indemnity was "without merit." Bali argued plaintiff's failure to tender to it the defense of Ms. Vrba's action barred its claim for attorney fees; plaintiff was not Bali's agent; and even if an agency relationship existed, plaintiff had no right to indemnity in the absence of any wrongdoing on Bali's part. Bali assumed, for purposes of its motion, that plaintiff was "someone's" agent.

Ridgegate sought summary adjudication that it had "no obligation to impliedly indemnify" plaintiff. Ridgegate argued plaintiff's failure to tender to it the defense of Ms. Vrba's action barred its claim for attorney fees. Ridgegate further contended plaintiff could not recover on its implied indemnity claim as it could not show "that liability was imposed upon it because of [Ridgegate's] failure to perform a duty owed to [Ms.] Vrba." Ridgegate assumed, for purposes of its motion, that plaintiff was its agent.

It was undisputed: there was no express written or oral indemnity agreement between plaintiff and Bali; likewise, no such agreement existed between plaintiff and Ridgegate; and plaintiff did not tender its defense of Ms. Vrba's action to Bali or Ridgegate. The court: concluded Ridgegate, as the principal, had a duty to indemnify plaintiff as its agent; assumed, for purposes of the motion, that Bali also owed a duty to indemnify plaintiff but had "rights over against" Ridgegate; but found plaintiff's claim for attorney fees (but *not* costs) was barred under section 1021.6 because it failed to tender the defense of Ms. Vrba's action to Ridgegate and Bali.[5] The heart of the trial court's ruling was that section 1021.6 barred plaintiff's claim for

---

[4]Only about $3,900 of that total consisted of costs; the balance consisted of attorney fees.

[5]The court's ruling on the attorney fee issue violated section 437c, subdivisions (f) and (n)(2), by failing to adjudicate an entire cause of action. Further, the summary issue adjudication order resolved a question not presented in the moving papers in violation of the holdings of: *White Motor Corp.* v. *Teresinski* (1989) 214 Cal.App.3d 754, 764, footnote 17 [263 Cal.Rptr. 26]; *Gonzales* v. *Superior Court* (1987) 189 Cal.App.3d 1542, 1546 [235 Cal.Rptr. 106]; and *Homestead Savings* v. *Superior Court* (1986) 179 Cal.App.3d 494, 498

reimbursement of its attorney fees. The court stated: "To the extent, if at all, that [plaintiff's] damages consist of costs *other than* attorney fees, those damages are not barred by [section 1021.6], and accordingly, the alternative motions of Bali and Ridgegate for *summary judgment* are denied." (Original italics.) The parties then stipulated to the entry of a judgment adverse to plaintiff on the condition that "should plaintiff appeal and the appellate court reverse, plaintiff's claim for costs will be automatically reinstated in this action[.]"[6]

## III.  DISCUSSION

### A.  *Standard of Review*

The law, as it was in effect in 1993 when the summary issue adjudication motions were filed and granted, described how a trial court was to consider a request for summary issue adjudication by a defendant as follows. A motion for summary judgment would be granted if the moving papers established that there was no triable issue of material fact and the moving party was entitled to judgment as a matter of law. (§ 437c, subd. (c).) With respect to summary issue adjudication, the statute provided in relevant part: "If it is contended that one or more causes of action within an action has no merit or that there is no defense thereto, . . . any party may move for summary adjudication as to that cause or causes of action, . . . A cause of action has no merit if one or more of the elements of the cause of action, even if not separately pleaded, cannot be established, or if there is a complete defense to the cause of action." (§ 437c, subd. (f).) Further, the

[224 Cal.Rptr. 554]. However, no such objection has been raised on appeal by the parties. Had these issues been raised by plaintiff, we would have been compelled by controlling statutory language and decisional authority to reverse the judgment.

The court also granted summary issue adjudication in favor of Bali and Ridgegate as to plaintiff's second and third causes of action for breaches of duty and contract respectively. The court's ruling as to the second and third causes of action has not been challenged on appeal. Therefore, any issue which could have been raised has been waived. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317].)

[6]The trial court's implied finding that triable issues of fact remained with respect to plaintiff's cause of action for indemnification has not been challenged on appeal. Rather, plaintiff disputes the court's limited ruling, on the summary issue adjudication motions, that its claim for indemnification as to attorney fees was barred by section 1021.6 because it did not tender its defense of Ms. Vrba's action to Ridgegate and Bali. The parties agree the question whether Fidelity was in fact the agent of Ridgegate or Bali is not at issue in this appeal. Rather, the trial court assumed, without deciding, that an agency relationship existed. Therefore, the only issue before this court is whether the court properly concluded section 1021.6 barred plaintiff's claim as to attorney fees. We specifically do not address the question whether plaintiff was in fact the agent of Ridgegate or Bali.

summary judgment law as it was in effect in 1993, provided in pertinent part: "For purposes of motions for summary judgment and summary adjudication: . . . [¶] (2) A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action." (§ 437c, subd. (n)(2) as amended by Stats. 1992, ch. 1348.) An appellate court determines de novo whether there is a genuine issue of material fact and the moving party was entitled to summary judgment or summary adjudication as a matter of law. (*Jambazian* v. *Borden* (1994) 25 Cal.App.4th 836, 844 [30 Cal.Rptr.2d 768]; *Daniels* v. *DeSimone* (1993) 13 Cal.App.4th 600, 607 [16 Cal.Rptr.2d 615]; *Wilson* v. *Blue Cross of So. California* (1990) 222 Cal.App.3d 660, 670 [271 Cal.Rptr. 876].)

### B. A Cause of Action for Indemnification Can Arise Out of a Principal-agent Relationship

The statutory definition of an "agent" is as follows: "An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) ▮ As a general rule, an agent is entitled to indemnification by its principal for losses incurred by the agent in the execution of the agency. (Rest.2d Agency, § 438, p. 322; 3 Cal.Jur.3d, Agency, § 109, p. 151; cf. Lab. Code, § 2802.)[7] For example, an agent which becomes personally liable for the performance of a contract entered into for its principal is entitled to indemnification by the principal for damages sustained because of the breach of that agreement. (*Sunset-Sternau Food Co.* v. *Bonzi* (1964) 60 Cal.2d 834, 837 [36 Cal.Rptr. 741, 389 P.2d 133]; *Rimington* v. *General Accident Group of Ins. Cos.* (1962) 205 Cal.App.2d 394, 397 [23 Cal.Rptr. 40].) The Restatement Second of Agency provides that a principal has a duty to its agent "who is not barred by the illegality of [her or] his conduct" to indemnify the agent for "expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being

---

[7]Labor Code section 2802 provides: "An employer shall indemnify [her or] his employee for all that the employee necessarily expends or loses in direct consequence of the discharge of [her or] his duties as such, or of [her or] his obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying such directions, believed them to be unlawful."

unfounded but not brought in bad faith . . . ."[8] (Rest.2d Agency, § 439, subd. (d), p. 329.) The comment to section 438 explains that instances in which the principal has a duty to indemnify its agent include "those [situations] in which the agent has suffered a loss which may not have benefited the principal but in which liability depends upon a conception that because the agent was performing the principal's business it is fair that the principal should bear the incidental losses, such as the rule that the principal should indemnify the agent for the expenses of defending an action against [her or] him because [she or] he acted for the principal, the action being ultimately unsuccessful." (Rest.2d Agency, § 438, com. a, p. 324.) Section 439, subdivision (d) of the Restatement Second of Agency provides in pertinent part: "Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of [her or] his conduct to indemnify [her or] him for: . . . [¶] (d) expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith . . . ." The comment to section 439, subdivision (d) states: "An agent who has done an authorized act which brings him into contact with others, such as the making of a contract or the taking possession of a chattel, is ordinarily entitled to indemnity for the expenses of a successful defense to actions brought by third persons acting under the mistaken belief that the agent's conduct was a breach of contract, a tort, or otherwise created liability to them. If the action is the result of a reasonable mistake of law or fact by the third person, it is within the risks attendant upon authorizing the conduct and one which the principal customarily assumes." (Rest.2d, Agency, § 439, com. h, p. 333.) The "expenses" of

---

[8]The "bad faith" caveat is explained in the Restatement Second of Agency as follows: "Indemnity for the expense of defending actions brought against an agent because of a transaction entered into on account of the principal is granted as a matter of course where a judgment is obtained against the agent, if the principal has been notified. . . . The same rule should apply where suit is brought and successfully defended. This is true whether or not the other party was reasonable in beginning the proceeding, but the courts have been reluctant to allow actions in such cases, and hence the Caveat." (Rest.2d Agency (appen.) § 439, com. d, p. 685.) This caveat was discussed in *Douglas* v. *Los Angeles Herald-Examiner* (1975) 50 Cal.App.3d 449, 462 [123 Cal.Rptr. 683], a case involving an employer's duty to indemnify an employee pursuant to Labor Code section 2802. The court stated: "[W]e cannot endorse the requirement of the Restatement that the action by the third person (for which the employee is entitled to indemnity) must be one which was 'not brought in bad faith' since no such distinction appears in Labor Code section 2802. The employee who is sued for authorized acts in the scope of [her or] his employment is as much in need of and deserving of indemnity if the third person acts in bad faith as the employee is if the third person acts in good faith. The needs and rights of the employee should not be measured by the state of mind of the third person plaintiff. If the term 'bad faith' is intended to only exclude actions brought as a result of collusion between the third person and the employee, then we have no quarrel with the term."

a successful defense for which indemnification is claimed by an agent ordinarily include attorney fees. (Cf. *Douglas* v. *Los Angeles Herald-Examiner, supra,* 50 Cal.App.3d at p. 465 [expenses incurred by an innocent employee in defense of a lawsuit for conduct within the scope of the employment included attorney fees under Lab. Code § 2802].)

Further, an agent seeking indemnification from its principal for expenses incurred in defending a third party action need not have tendered its defense of the action as an absolute prerequisite to indemnification. (*Sunset-Sternau Food Co.* v. *Bonzi, supra,* 60 Cal.2d at p. 844 [agent held personally liable for performance of contract undertaken for principal], citing Rest.2d, Agency, § 438, com. e, p. 326; see also Civ. Code, § 2778, subd. 4.)[9] In *Sunset-Sternau,* the Supreme Court held: "The agent's failure to notify the principal . . . merely requires that the agent prove that [she or] he tendered a reasonable defense." (*Sunset-Sternau Food Co.* v. *Bonzi, supra,* 60 Cal.2d at p. 844.)[10]

---

[9]Civil Code section 2778, subdivision 4 provides: "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: [¶] . . . [¶] . . . The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if [she or] he chooses to do so; . . ."

[10]Section 438 of the Restatement Second of Agency, comment e provides: "If suit is brought against the agent upon a disputed claim as to which [she or] he is entitled to indemnity from the principal, [she or] he may notify the principal to defend, and if the principal fails to do so, the agent is entitled to expenses thereafter reasonably incurred by [her or] him in a defense made in good faith or in a reasonable compromise of the action. This is true even though the principal directs [her or] him not to defend the action, since the agent is entitled to protect [herself or] himself against what [she or] he reasonably believes to be an unfounded claim, unless the principal assumes charge of the defense. Although the agent can properly consider [her or] his own interests, in order to have indemnity [she or] he must act fairly in the protection of the principal's interests. If the principal fails to defend after [she or] he has been given an opportunity to do so and if, after a defense in good faith, the agent is required to satisfy the claim, the issues therein involved are res judicata between the principal and agent. Whether or not the agent has made a defense in good faith and whether or not the expenses in such defense have been reasonably incurred are questions of fact. [¶] *If the agent does not notify the principal and give [her or] him an opportunity to defend, [she or] he can recover the amount paid upon the claim only if [she or] he proves that [she or] he made a reasonable defense*; if, as would be frequently true, [she or] he should have given an opportunity to the principal to defend or compromise, or should have obtained additional information from the principal, [she or] he is not entitled to indemnity for losses resulting from such failure." (Rest.2d Agency, § 438, com. e, p. 326, italics added.) A question which is not before us on the facts of this case, and which we therefore do not decide, is this: does section 1021.6 govern a claim for indemnification by an agent on the grounds the agent was required to bring or defend an action through the tort of the principal?

### C. *A Triable Controversy Exists as to the Applicability of Section 1021.6 to This Case*

■    Section 1021.6 states an exception to the general rule set forth in section 1021. Section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; . . ." To determine when section 1021.6 applies, we look first to the language of the statute. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Section 1021.6, by its terms, applies to claims for implied indemnity where the indemnitee has been required to bring or defend an action "*through the tort of the indemnitor.*" (Italics added.) That language is clear and unambiguous. There is no need for construction and it is neither necessary nor appropriate to resort to indicia of Legislative intent. (*Lungren v. Deukmejian, supra*, 45 Cal.3d at p. 735.)

Consistent with the plain language of the statute, the California decisional authority in which section 1021.6 is discussed has involved claims for indemnification by allegedly innocent indemnitees who have been required, through the tort of the indemnitor, to defend an action by a third party. (See *Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1026-1027 [269 Cal.Rptr. 720, 791 P.2d 290] [purchaser of condominium complex claimed right to implied contractual indemnity against developer on ground builder's tortious misrepresentation of fact resulted in suit against new owner]; *Uniroyal Chemical Co.* v. *American Vanguard Corp.* (1988) 203 Cal.App.3d 285, 293 [249 Cal.Rptr. 787] [retailer and wholesaler of agricultural chemical sought indemnification against manufacturer who engaged in tortious conduct on grounds their liability was solely a result of their position in the chain of distribution]; *Reliance Electric Co.* v. *Superior Court* (1986) 190 Cal.App.3d 369, 372 [237 Cal.Rptr. 1] [crane owner alleged right to indemnification against designer and manufacturer of portions of crane in personal injury action]; *IRM Corp.* v. *Carlson* (1986) 179 Cal.App.3d 94, 100, 111 [224 Cal.Rptr. 438] [manager of apartment complex sought indemnification against general contractor and subcontractor in suit by tenant for injuries suffered when he struck a glass shower door].)[11]

---

[11]In one case the Court of Appeal held section 1021.6 applied where the indemnitor engaged in wrongful conduct other than a tort. In *Bear Creek Planning Com.* v. *Title Ins. & Trust Co.* (1985) 164 Cal.App.3d 1227, 1233-1236 [211 Cal.Rptr. 172], disapproved on another point in *Bay Development, Ltd.* v. *Superior Court, supra*, 50 Cal.3d at page 1032, a homeowners association sought indemnification against a title insurance company whose *breach of a contractual duty* to record covenants, conditions, and restrictions resulted in a

The conclusion that section 1021.6 applies only to claims for indemnification where an underlying tort was committed by the indemnitor is supported by its legislative history. Section 1021.6 was enacted in 1979 to overrule the Supreme Court's opinion in *Davis* v. *Air Technical Industries, Inc.* (1978) 22 Cal.3d 1, 5-8 [148 Cal.Rptr. 419, 582 P.2d 1010]. (*Uniroyal Chemical Co.* v. *American Vanguard Corp., supra,* 203 Cal.App.3d at p. 297; *Bear Creek Planning Com.* v. *Title Ins. & Trust Co., supra,* 164 Cal.App.3d at p. 1244.) *Davis* was a product liability action in which the manufacturer and retailer of an elevator were sued by an injured third party. The retailer tendered its defense of the action to the manufacturer which refused to defend the retailer. The plaintiff in *Davis* asserted causes of action against both defendants for negligence, breach of express warranty, and strict liability. (*Davis* v. *Air Technical Industries, Inc., supra,* 22 Cal.3d at p. 3.) The manufacturer defended against the allegations of defective design while the retailer defended only against the allegations of its own negligence and breach of warranty. The trial court granted the retailer's motion for nonsuit on the breach of warranty claim. The plaintiff voluntarily dismissed the negligence claim. The jury found both defendants strictly liable to the plaintiff. However, on the retailer's cross-complaint for indemnification against the manufacturer, the trial court awarded the dealer indemnification for the amount of the plaintiff's damages *and* the cross-complainant's attorney fees incurred in defense of the main action. (*Id.* at p. 4.) The Supreme Court reversed. It held the retailer was not entitled to indemnification as to its *attorney fees* because it had incurred those costs "solely in defense of *alleged* wrongdoing on its part" and had "defended exclusively against *allegations* of [its] own negligence . . . ." (*Id.* at p. 6, fn. omitted, italics added.)

Supreme Court Justice Stanley Mosk dissented. Justice Mosk reasoned the retailer was entitled to indemnification by the manufacturer for its attorney

---

slander of title suit against the condominium owners. Hence, the indemnification claim arose not from the indemnitor's tort but from the breach of a contractual duty. The Court of Appeal for the Third Appellate District upheld the trial court's finding the title insurance company was obligated to indemnify the homeowners association "on the basis of an implied contract to discharge damages foreseeably sustained by [the homeowners association] as a result of the [title insurer's] breach of promise to timely record the CC & Rs . . . ." (164 Cal.App.3d at p. 1243.) The court concluded the homeowners association was properly awarded the attorney fees it incurred in defending the slander of title action. (*Id.* at pp. 1243-1245.) However, in *Los Angeles Nut House* v. *Holiday Hardware Corp.* (9th Cir. 1987) 825 F.2d 1351, 1356, the Court of Appeals for the Ninth Circuit took note of the *Bear Creek* decision but held attorney fees were recoverable under section 1021.6 "only if the action is based in tort." The court held section 1021.6 was inapplicable to a claim for indemnity based on an action "grounded in contract and breach of warranty, not tort." (825 F.2d at p. 1356.) *Los Angeles Nut House* was a diversity action for breach of contract and warranty in the sale of goods in which a buyer of damaged nuts sought indemnification against the seller's broker based on express and implied warranties in the sale of macadamias.

fees incurred in defending the lawsuit because the retailer was absolved of responsibility and the manufacturer was found to be solely responsible. (*Davis* v. *Air Technical Industries, Inc.*, *supra*, 22 Cal.3d 1, 9-10 (dis. opn. of Mosk, J.).) Justice Mosk believed the case was controlled by *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645], in which the court had held: "A person who through the *tort of another* has been required to act *in the protection of* [*her or*] *his interests* by bringing or *defending* an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, *attorney's fees*, and other expenditures thereby suffered or incurred. [Citations.]" (Italics added.) In *Prentice*, a seller of land recovered from an escrow holder the attorney fees it incurred in prosecuting an action; the need to prosecute the action resulted from the escrow holder's negligence in closing the sale. (*Id.* at pp. 619-620.) Justice Mosk concluded the majority in *Davis* had erred in looking to the allegations against the retailer rather than to the actual facts as developed during the litigation. (*Davis* v. *Air Technical Industries, Inc.*, *supra*, 22 Cal.3d at p. 9.) He noted the retailer "did not gratuitously undertake a defense and incur obligations for attorney's fees; he requested Air Technical to defend him and it declined to do so." (*Ibid.*)

The language of section 1021.6 reflects Justice Mosk's reasoning. It tracks the language in *Prentice* v. *North Amer. Title Guar. Corp.*, *supra*, 59 Cal.2d at page 620, quoted by Justice Mosk. It includes a requirement that the indemnitee tender its defense of the third party action to the indemnitor. It mandates a finding that the indemnitee was without fault. In short, section 1021.6 imposes liability on a tortious indemnitor for attorney fees it causes an innocent indemnitee to incur. We agree with the aforementioned decisional authority that section 1021.6 was enacted to overrule the *Davis* opinion.

In contrast to the circumstances section 1021.6 was enacted to address, plaintiff does not allege it was involved in Ms. Vrba's action due to the tort of Ridgegate or Bali. The trier of fact in that underlying action was asked to determine whether Mr. Katz, as president of plaintiff, had acted improperly or negligently and whether Ridgegate was liable for that improper conduct under agency principles. Plaintiff did not allege it was required to defend the underlying action "through the tort of" (§ 1021.6) Ridgegate or Bali. Further, no evidence was cited in the separate statements of undisputed facts that plaintiff was required to defend the underlying lawsuit because of tortious conduct engaged in by Ridgegate or Bali. Instead, plaintiff's cause of action for indemnification arises out of its alleged agency relationship with Ridgegate and Bali. Therefore, a triable controversy exists as to whether section 1021.6 is applicable to this case.

## IV.  Disposition

The judgment is reversed. The order granting the summary issue adjudication motions is reversed. Plaintiff, Fidelity Mortgage Trustee Service, Inc., is to recover its costs on appeal, jointly and severally, from defendants, Ridgegate East Homeowners Association and Bali Management, Inc.

Grignon, J., and Armstrong, J., concurred.