**UNITED STATES of America, Plaintiff,**

v.

**729.773 ACRES OF LAND, MORE OR LESS, SITUATE IN the CITY AND COUNTY OF HONOLULU, State of Hawaii; et al., Defendants.**

**Civ. No. 80–0504.**

United States District Court,
D. Hawaii.

Jan. 7, 1982.

Emilia DeMeo, Asst. U. S. Atty., Wallace W. Weatherwax, U. S. Atty., Honolulu, Hawaii, for plaintiff.

Charles B. Dwight, III, Michael W. Gibson, Ashford & Wriston, Honolulu, Hawaii, for F. E. Trotter, Inc., W. H. McVay, Inc., P. R. Cassiday, Inc. and H. C. Cornuelle, Inc., trustees under the estate of James Campbell, deceased.

Philip J. Leas, Nancy J. Stivers, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for Oahu Sugar Co., Ltd.

Grant Tanimoto, Deputy Atty. Gen., Tany S. Hong, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for George Freitas, Director of Taxation, State of Hawaii.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE

SAMUEL P. KING, District Judge.

### I. Introduction

On September 16, 1980, the United States of America filed a Complaint in Condemnation (hereinafter referred to as the original complaint) to take certain property under its power of eminent domain. The real estate condemned is required for U. S. Naval purposes as an Explosive Safety Hazard Zone at the West Loch Branch of the U. S. Naval Magazine at Lualualei, Pearl Harbor, Hawaii. On May 29, 1981, plaintiff brought this Motion to Strike paragraphs 4(a) through 4(f) of the Amended Answer which was filed on May 14, 1981, by defendant Oahu Sugar Company, Limited (hereinafter referred to as Oahu Sugar). Essentially plaintiff argues that the defenses alleged by Oahu Sugar in these paragraphs are both legally insufficient and untimely.

This Court, having reviewed the memoranda submitted by plaintiff and defendant together with the records filed herein, and having been fully advised in the premises, concludes that all the defenses proffered by Oahu Sugar in its Amended Answer of May 14, 1981, were raised in a timely fashion but that Defenses 4(a), 4(b), 4(c), 4(d), and 4(e) should be stricken as legally insufficient. Accordingly, IT IS HEREBY ORDERED that plaintiff's Motion to Strike as to these defenses is GRANTED. However the remaining defenses raised in the Amended Answer present valid arguments which must be considered at trial. Therefore, IT IS HEREBY ORDERED that plaintiff's Motion to Strike as to the remaining defenses is DENIED.

### II. Procedural History

On September 16, 1980, when plaintiff filed the original Complaint in Condemnation, it also filed a Declaration of Taking pursuant to the requirements of 40 U.S.C. § 258a[1] which provides in relevant part:

Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute or such less estate or interest therein as is specified in said declaration, shall vest in the United States....

The original complaint does not specifically mention the inclusion of growing crops in the property which is condemned. However, the contemporaneously filed Declaration of Taking does specifically include the growing crops.

The government deposited $10,000,000 with this Court on September 16, 1980, as estimated compensation for all the interests taken. On September 19, 1980, Oahu Sugar joined in a Stipulation for Withdrawal of Estimated Compensation,[2] thereby implicitly acknowledging that it had received notice that its interests were included in the property taken by the original Complaint in Condemnation and the contemporaneously filed Declaration of Taking. On October 6, 1980, 20 days after the original complaint was filed, Oahu Sugar filed its Answer (hereinafter referred to as Oahu Sugar's first answer). It contained only general allegations of the damages Oahu Sugar would suffer by reason of the taking. Included were references to "severance damages, crop damages, and damages [relating to] ... repair and relocation ...."

1. Act of February 26, 1931, c. 307, §§ 1–5 (46 Stat. 1421), 40 U.S.C. §§ 258a–258e (1931).

2. The Stipulation for Withdrawal of Estimated Compensation was entered into by plaintiff, defendant Oahu Sugar, and defendant trustees under the will and estate of James Campbell, deceased. The James Campbell trust estate is the fee owner of the land covered in the Complaint. As this Motion to Strike concerns only Oahu Sugar's Amended Answer, all future references to the defendant will pertain only to Oahu Sugar whose interest in the property taken is as tenant of the land covered by the complaint and as owner of the crops and improvements thereon.

On May 14, 1981, approximately two months after an Order for Delivery of Possession had been entered, defendant filed an Amended Answer (hereinafter referred to as Oahu Sugar's second answer). In this second answer which was filed pursuant to an order of this court granting Oahu Sugar leave to amend, defendant took the position for the first time that the crops growing on the land were not covered by the original complaint and therefore were not included in the property taken by the government on September 16, 1980. Additionally, Oahu Sugar claimed that the taking was invalid as being without proper legislative and administrative authorization, arbitrary and capricious, and without sufficient public purpose. The earlier general allegation as to damages set forth in paragraph 4 of the first answer (quoted above) was repeated as paragraph 5 of the second answer.

On May 29, 1981, the plaintiff moved to strike paragraphs 4(a) through 4(f) of Oahu Sugar's second answer as being legally insufficient and untimely. Perhaps in recognition of the criticism that the original complaint did not itself mention growing crops, and to remove any doubt, the United States filed an Amended Complaint in Condemnation on August 18, 1981 (hereinafter referred to as the second complaint). The second complaint has an Amended Schedule "B" attached which describes the "interest to be taken [as] an estate in fee simple, including all improvements and crops located thereon."

In response to the second complaint, Oahu Sugar on August 27, 1981, filed its Answer to Amended Complaint (hereinafter referred to as Oahu Sugar's third answer). It essentially repeats the second answer, with the exception that it is no longer claimed that the growing crops are not included in the property taken.

The United States has not filed another Motion to Strike directed at Oahu Sugar's Answer to Amended Complaint, but it is understood that the May 29, 1981, Motion to Strike Oahu Sugar's second answer also applies to Oahu Sugar's third answer which was filed August 27, 1981. Although Oahu Sugar's newest answer no longer alleges that growing crops are not included in the taking, this Court will deal with that issue as it may relate to other issues.

III. Argument

A. *Motion to Strike Defenses as Untimely*

■ The government argues in part that the Motion to Strike should be granted because the defenses posed by Oahu Sugar in its second answer were raised in an untimely fashion since they were not pleaded within 20 days after the original complaint in condemnation was filed, as is the apparent requirement of Fed.R.Civ.P. 71A(e). The rule states quite explicitly that:

... A defendant waives all defenses and objections not so presented [within 20 days], ... [except as to] the amount of the compensation to be paid for his property .... No other pleading or motion asserting any additional defense or objection shall be allowed. Fed.R.Civ.P. 71A(e).

While Oahu Sugar's first answer was filed within the 20-day time limit, the defenses which are the subject of the present motion were not raised until approximately eight months later. However, Rule 71A(f) permits the pleadings to be amended. While subsection (f) refers primarily to amendments of the complaint, the note to Rule 71A(f) by the Advisory Committee which drafted the rules expressly recognizes a defendant's ability to amend an answer in accordance with Fed.R.Civ.P. 15. Rule 15, in turn, permits a defendant to amend an answer within 20 days after it is served if the action has not yet been placed on the trial calendar, or to amend it after that time period has passed "... by [obtaining] leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In the present case, Oahu Sugar obtained leave of this court (by action of the U. S. Magistrate) on May 13, 1981, to amend its answer. Since the first answer was filed within the time period allowed by Rule 71A(e), the defenses raised

in the second answer are timely in view of the language of Rule 15(c) which provides in relevant part:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading
. . . .

*Accord*; 7 Moore's Federal Practice ¶ 71A.70[3]. Therefore, the timely defenses raised by Oahu Sugar in the second answer must each be evaluated in order to determine their legal sufficiency.

B. *Motion to Strike Defenses as Insufficient*

 Plaintiff's motion to strike defenses 4(a) through 4(f) of defendant's second answer is made pursuant to Fed.R.Civ.P. 12(f), which states in relevant part:

Upon motion made by a party . . . the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

A motion to strike is a severe measure and it is generally viewed with disfavor. Although it is not normally granted unless prejudice would result to the movant from the denial of the motion, it is appropriately granted where the defense is clearly legally insufficient, *Narragansett Tribe, Etc. v. So. R. I. Land Devel. Corp.*, 418 F.Supp. 798, 801 (D.R.I.1976), as, for example, when there is clearly no bona fide issue of fact or law. *Prudential Ins. Co. of America v. Marine Nat. Exch. Bank*, 55 F.R.D. 436, 438 (E.D.Wis.1972).

1. *Motion to Strike Defenses 4(a) and 4(b)*

Oahu Sugar raises the following two arguments as defenses 4(a) and 4(b) in the second answer:

(a) Oahu is the tenant of all lands covered by the Complaint and the owner of all crops and improvements thereon.

(b) Oahu's growing crops on the lands covered by the Complaint are Oahu's personal property and are not covered by the Complaint.

Essentially defenses 4(a) and 4(b) state two parts of the same objection: that the original complaint does not cover the crops growing on the condemned land. Therefore, this court will consider them together.

The plaintiff's original complaint in condemnation identifies the property to be taken in an attached Schedule "B" which describes two parcels of land by metes and bounds and certain easements appurtenant thereto. Although the schedule does not include mention of improvements, growing crops, or personal property, Oahu Sugar, whose sole remaining interest is as owner of all improvements and growing crops, is included as an Additional Party Having or Who May Claim an Interest in the Property.

At the same time the original complaint was filed, the plaintiff also filed a Declaration of Taking which contained the following paragraph:

The estate hereby taken in the lands described in Exhibit 'A', *including all the improvements and growing crops located therein,* is fee simple title. [Exhibit "A" identified the same property as that which was described in Schedule "B" of the original complaint.] *Emphasis added.*

Although crops were included in the Declaration of Taking, the complaint itself was not amended to specifically mention growing crops until after Oahu Sugar had made the argument (in its second answer) that the crops had not been covered by the first complaint.

 In taking the contrary position—that the growing crops were covered by the original complaint, the plaintiff relies upon the argument that growing crops are part of the real property. However, in Hawaii, this is not so. Cultivated sugar cane, still growing on the land, is considered to be personal property. *Nawahi v. Hakalau Plantation Co.*, 14 Haw. 460 (1902). Without addressing the implications of this item of Hawaii property law, the government points to the language of the contemporaneously filed Declaration of Taking as a

sufficient supplement to any technical insufficiency in the language of the original complaint. Although the Declaration of Taking seems to be attempting to define growing crops as part of the real property estate and not as personal property, there is no dispute that the Declaration indicates the intention of the plaintiff to take the growing crops.[3]

■■■ The question remains whether, notwithstanding the ambiguous language of the original complaint, the pleadings sufficiently condemned the growing crops. Rule 71A is not intended to and does not supersede the Declaration of Taking Act. 40 U.S.C. §§ 258a–258e. The latter is a supplementary condemnation statute which is permissive in nature and designed to permit the prompt acquisition of title by the United States, pending a condemnation proceeding, upon a deposit in court of the estimated compensation required. As stated in *West, Inc. v. United States*, 374 F.2d 219, 224 (5th Cir. 1967):

> This statute is complementary to and congenial with Rule 71A, inasmuch as 40 U.S.C. §§ 258a–258e permits the prompt acquisition of title prior to suit, whereas Rule 71A provides condemnation proceedings for acquiring land in connection with a suit. *See also Covered Wagon, Inc. v. Commissioner of Internal Revenue*, 369 F.2d 629, 634 (8th Cir. 1966).

Since the Declaration of Taking Act is supplemental to condemnation under Rule 71A, the documents called for by each may be read together to determine the reach of the condemnation action. In itself, the original complaint was inept as a matter of pleading in its omission of any reference to growing crops. However, when taken together with the contemporaneously filed Declaration of Taking, the original complaint was sufficient to condemn the growing crops along with the land. The effect of the Amended Complaint in Condemnation was only to clarify the original intent of the government to take the crops as well as the land.

It follows that the allegations contained in paragraphs 4(a) and 4(b) of Oahu Sugar's Amended Answer are not valid defenses, and plaintiff's Motion to Strike these defenses is hereby GRANTED.

### 2. *Motion to Strike Defense 4(c)*

In paragraph 4(c) of the second answer, Oahu Sugar alleges that the taking of its crops is invalid because without proper legislative and administrative authorization. This objection to the taking is an insufficient defense.

■■■ As stated in the Declaration of Taking, the acquisition and condemnation was authorized pursuant to the Military Construction Authorization Act, 1980,[4] the Military Construction Appropriation Act, 1980,[5] and ch. 728 of the Act of August 1, 1888.[6] Section 201 of the Military Construction Authorization Act, authorizes the Secretary of the Navy to

> establish or develop military installations and facilities by acquiring . . . permanent or temporary public works, including land acquisition, site preparation, appurtenances, utilities, and equipment . . . .

An act of Congress authorizing the Federal Government to acquire property for public use, when read together with the Act of August 1, 1888, which is a general condemnation act, authorizes the United States to acquire such property by condemnation. *Hanson Co. v. United States*, 261 U.S. 581,

---

**3.** Neither is there any dispute between the government and Oahu Sugar that personal property can be subject to the power of eminent domain. The `Advisory Committee's Notes to Fed.R.Civ.P. 71A(a) state in relevant part:

> Rule 71A affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain. . . . While the almost exclusive utility of the rule is for the condemnation of real property, it also applies

> to the condemnation of personal property, either as incident to real property or as the sole object of the proceeding . . . .

**4.** Pub.L.No.96–125, § 201, 93 Stat. 928, enacted Nov. 26, 1979.

**5.** Pub.L.No.96–130, 93 Stat. 1017, enacted Nov. 30, 1979.

**6.** 25 Stat. 357 (codified at 40 U.S.C. § 257 (1888)).

587, 43 S.Ct. 442, 444, 67 L.Ed. 809 (1922). Thus in the present case as a matter of law, there is sufficient Congressional authorization for the taking of Oahu Sugar's crops. Once an administrative agency has been delegated authority by Congress to take lands for public use, the courts have no jurisdiction to review either the Congressional authority or the administrative determination as to which parcels of land are necessary to the project. "The necessity of taking ... private property for public use is legislative in nature and one over which the courts lack jurisdiction." *United States v. 80.5 Acres of Land*, 448 F.2d 980, 983 (9th Cir. 1971). *See also United States v. 18.2 Acres of Land More or Less*, 442 F.Supp. 800, 811 (E.D.Cal.1977).

Accordingly, plaintiff's motion to strike this defense is hereby GRANTED.

### 3. *Motion to Strike Defenses 4(d) and 4(e)*

Paragraph 4(d) of Oahu Sugar's second answer alleges that the taking of its crops is invalid because the decision to do so was arbitrary and capricious in that the "... plaintiff has no purpose or intent to cultivate, harvest or otherwise utilize, damage or destroy the crops ...." The sole reasons given by the defendant in support of an argument of arbitrary and capricious conduct relate to the purpose and the necessity which is required to justify a public taking in eminent domain. This defense is thus merely another statement of the objections raised in defense 4(e)—that the taking of these crops is invalid because without public purpose. For this reason, this court will consider these defenses together.

Oahu Sugar relies in large part upon *United States v. 18.2 Acres of Land More or Less*, 442 F.Supp. 800 (E.D.Cal. 1979) and *Southern Pacific Land Company v. United States*, 367 F.2d 161 (9th Cir. 1966), *cert. denied*, 386 U.S. 1030, 87 S.Ct. 1478, 18 L.Ed.2d 592 (1967) to establish that the Ninth Circuit standard for upholding this defense is upon a showing that the taking was "arbitrary and capricious." A showing of "egregious bad faith", as is ar-

gued by the plaintiff, is not necessary in this Circuit. However, Oahu Sugar fails to meet the standard it proffers. *See United States v. 18.2 Acres of Land More or Less*, 442 F.Supp. at 813.

As noted above, the facts alleged in support of Oahu Sugar's claim that the taking was arbitrary and capricious pertain solely to the alleged lack of a public purpose for taking the crops. This same argument was made unsuccessfully by the landowner in *Southern Pacific Land Company v. United States*, 367 F.2d at 162, who sought to prevent the taking of the mineral estate because it was admittedly unnecessary to the government project. The taking was upheld as not being arbitrary or capricious.

The original complaint alleges that the property is being taken for military use as an Explosive Safety Hazard Zone in Pearl Harbor, Honolulu, Hawaii. The United States has the power to take private property for the establishment and maintenance of military forces. *See generally Berman v. Parker*, 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954) and *Southern Pacific Land Company v. United States*, 367 F.2d 161 (9th Cir. 1966), *cert. denied*, 386 U.S. 1030, 87 S.Ct. 1478, 18 L.Ed.2d 592 (1967).

Once it has been ascertained that the taking is for a public purpose, the courts have no jurisdiction to review the extent of property taken. "The extent, amount, or title of property taken lies within administrative determination subject only to the requirement that just compensation be paid." *Ledford v. Corps of Engineers*, 500 F.2d 26, 28 (6th Cir. 1974). There is no judicial review of whether the property taken is actually necessary for the public project so long as there is both Congressional authorization and a reasonable relation to public purpose. *United States v. 2606.84 Acres*, 432 F.2d 1286, 1289 (5th Cir. 1970), *cert. denied*, 402 U.S. 916, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971), *reh. denied*, 403 U.S. 912, 91 S.Ct. 2203, 29 L.Ed.2d 690 (1971). *See also Berman v. Parker*, 348 U.S. 26, 35, 75 S.Ct. 98, 103, 99 L.Ed. 27 (1954).

These cases are criticized by Oahu Sugar as being unrelated to the taking of crops.

Rather they involved a determination of the propriety of taking a whole area of land, instead of just the portion which the landowners unsuccessfully argued was the bare minimum necessary to the execution of the government project at hand. However, there need not be a separate public use to justify the taking of the crops.

In *United States v. 16,572 Acres of Land, More or Less,* 45 F.Supp. 23 (S.D.Tex.1942), after taking a certain parcel of land in fee simple absolute, the government sought to amend the Declaration of Taking to exclude the mineral estate as it was unnecessary for the public project. The government did not want to pay for the value of anything beyond the surface estate. However, the court refused to allow the amendment, holding that title in the entire fee simple absolute had already vested in the government. Even though the government did not want to take the mineral estate and did not need to take the mineral estate, the government was found to have taken the mineral estate nonetheless and was required to pay for it.

*See also United States v. 576.734 Acres of Land, Etc.,* 143 F.2d 408 (3d Cir. 1944) in which the government condemned certain property in Pennsylvania for the establishment of a Naval Reserve Aviation base. Inasmuch as the lessor of the land had already settled with the government as to the amount of compensation to which he was entitled for his interest in the land, the only issue remaining before the court was the amount of compensation to which the lessee of the land was entitled. The lessee's interest was comprised primarily of the value of the crops which were growing on the land at the time it was taken. The court held that the government was obligated to compensate the lessee for the value of his

crops in addition to paying the lessor for the value of the land.

*See also United States v. 12,918.28 Acres of Land, Etc.,* 57 F.Supp. 893 (W.D.La. 1944). There, the government condemned land to establish the Minden Shell Plant in Louisiana. Shortly thereafter, the government sold the crops which had been grown by two tenants on the land condemned. Clearly the crops were not needed to satisfy a public purpose as evidenced by the fact that they were sold shortly after they were validly taken. Nonetheless, the court recognized the right of the tenants to be compensated for the condemned crops.

Therefore, plaintiff's Motion to Strike these defenses is hereby GRANTED.

4. *Oahu Sugar's entitlement to separate compensation by the United States for crops as claimed in Defense 4(f)*

■ A lessee is entitled to the value of his crops when the United States government undertakes condemnation proceedings to take the land for public use. In *United States v. 576.734 Acres of Land, Etc.,* 143 F.2d 408, 409 (3d Cir. 1944),[7] the Third Circuit discussed the extent of the government's obligation to compensate a lessee for crops taken or destroyed. The United States would not be obligated to pay the market harvest value of a mature crop unless the crop was actually mature at the time of taking. Where the crop was immature at that time, the government's obligation would be limited to the market value of the immature crop. Inasmuch as there is no actual market value for immature crops, the court articulated a standard for measuring such a value. The calculations would start with the harvest value of a mature crop as of the day of taking. From that

---

**7.** For other cases which observe the right of the lessee to be separately compensated for his crop, *see also United States v. Pennsylvania-Dixie Cement Corp.,* 178 F.2d 195 (6th Cir. 1949) where the "crop" taken was a sand deposit for which the cement company had contracted the exclusive right of removal, *United States v. 9,890 Acres of Land, Etc.,* 56 F.Supp. 729 (E.D.N.Y.1944) where the lessee was allowed compensation for unspecified crops in

addition to compensation for the value of his lease for the remainder of the term less unpaid rentals, and *United States v. 12,918.28 Acres of Land, Etc.,* 57 F.Supp. 893 (W.D.La.1944) where the lessee's right to be compensated for his crop was noted as the U. S. District Court upheld the right of the lessee to recover from the landowner the amount of that compensation which was erroneously included in the amount paid to the landowner.

amount, the projected costs of further cultivation, harvesting, and marketing would be subtracted. In this way the lessee would be restored to the position he would have been in, but for the taking of his crops.

Other cases refer to the market value of the crops as an indication of the amount of compensation to be allowed. However, the point at which to measure the market value is often left unclear [*see, e.g.,* *United States v. 9,890 Acres of Land, Etc.,* 56 F.Supp. 729, 730 (E.D.N.Y.1944) and *United States v. 12,918.28 Acres of Land, Etc.,* 57 F.Supp. 893, 894 (W.D.La.1944)] or is described differently in various cases. There is little dispute that the value of mature crops is calculated by examining the market harvest value of similar crops on the day of taking in the same general locality. *See, e.g., United States v. 576.734 Acres of Land, Etc.,* 143 F.2d 408, 409 (3d Cir. 1944) and *Barnes v. United States,* 538 F.2d 865, 874 (Ct.Cl.1976).

However, the method of valuing immature crops is much less uniform. The formula which was articulated by the Third Circuit was used to establish the value of an immature banana squash crop in *Daily v. United States,* 90 F.Supp. at 701. This formula is compatible with cases which allow the value of the crop to be considered separately from the value of the land. (*See, e.g.,* cases discussed in footnote 7.) However, it conflicts with the approach of *Barnes v. United States,* 538 F.2d 865, 874 (Ct.Cl.1976) which held that the value of mature crops, ready for harvest as of the date of taking, may be recovered as a separate element of damages, but immature crops are not to be valued separately from the land. Instead, the incremental value they add to the land will be considered in valuing the whole reality. In support of this proposition the Court of Claims cited *King v. United States,* 504 F.2d 1138, 1142 (Ct.Cl.1974) which also recognized that where the crops are owned separately by the tenants, there must be separate awards to the landlord and the tenant. Nevertheless, the Court of Claims in *Barnes* did not expressly overrule its earlier decision in *Daily.*

The root of the difference between these two standards of measuring compensation for immature crops taken in condemnation is the issue of whether immature crops are valued separately from the land or whether they are valued only to the extent that they enhance the value of the land. There does not appear to have been any Ninth Circuit decisions which are directed at resolving this question.

This court adopts the approach articulated by the Third Circuit Court in *United States v. 576.734 Acres of Land, Etc.,* 143 F.2d at 409, for separately compensating a lessee for the market value of his immature crops as of the day of taking. This approach is especially applicable to the growing of sugar cane in Hawaii where this agricultural activity has been mechanized and brought under production controls to such an extent that forecasts of costs can be made with great accuracy.

Accordingly, plaintiff's Motion to Strike this defense is hereby DENIED.