**PLATTE ANCHOR BOLT, INC, Plaintiff,**

v.

**IHI, INC, et al Defendants.**

**IHI, Inc, Cross–Claimant,**

v.

**Park–Ohio Structural Hardware, LLC, et al, Cross–Defendants.**

**IHI, Inc, Counter–Claimant,**

v.

**Platte Anchor Bolt, Inc, Counter–Defendant.**

**No. C–03–2984 VRW.**

United States District Court, N.D. California.

April 19, 2004.

Andrew Joel Van Ornum, Watt, Tieder, Hoffar & Fitzgerald, LLP, San Francisco, CA, Jeffrey Brian Wilkinson, Lawrence Allen Wagner, Stewart Sokol & Gray, LLC, Portland, OR, for Plaintiff. ·

Julie E. Grey, Farella Braun & Martel, LLP, Jeffrey R. Williams, Morgenstein & Jubelirer LLP, San Francisco, CA, Todd B. Gary, Morales & Gary Pleasant Hill, CA, Richard David Corona, Esq., The Corona Firm, LLP, La Mesa, CA, Ramiro Morales, Morales & Gary, Pleasant Hill, CA, Steven S. Miyake, Law Office of Steven S. Miyake, San Francisco, CA, for Defendants.

Julie E. Grey, Scott B. Douglass, Esq., Farella Braun & Martel LLP, San Francisco, CA, for claimant. .

### ORDER

WALKER, District Judge.

This case concerns responsibility for the installation of defective bolts resulting in the delay of a bridge construction project. Defendant and cross-claimant IHI, Inc (IHI) is a subcontractor for that project and has filed a cross-claim against its co-defendant SLSB, LLC dba St Louis Screw & Bolt and Haydon Bolts, Inc (collectively, SLSB), the supplier of the bolts. SLSB now moves the court to: (1) dismiss one of IHI's cross-claims pursuant to FRCP 12(b)(6); and (2) strike IHI's prayer for attorney fees pursuant to FRCP 12(f). SLSB seeks to dismiss the cross-complaint's third claim for negligence on the ground that this claim is not independent from the contract between the parties, does not arise from intentional misconduct and claim economic injury that is not recoverable on a tort theory under *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). For the reasons stated below, both of SLSB's motions are DENIED (Docs. ## 72–74).

## I

### A

The following facts are taken largely from IHI's amended cross-claim (Doc # 49). The State of California Transportation Department's general contractor (referred to by the parties as the Joint Venture) recently undertook construction of the Carquinez Straights Bridge Project (the Project). See First Am Compl (FAC; Doc # 7) at 4 ¶ 5.1. IHI is and was a subcontractor for the Project. *Id.* On or about April 9, 2001, IHI solicited plaintiff Platte Anchor Bolt, Inc (Platte) for high strength bolts for use in construction of the Project. IHI Am Cross–Claim (Doc # 49) at 5 ¶ 12. On or about December 19, 2002, IHI sent Platte a purchase order for Project materials, including the bolts. *Id.* at 5 ¶ 13. On that same date, Platte sent SLSB a purchase order for the requested bolts. *Id.* at 5 ¶ 14. That purchase order was "made for the direct and intended benefit of IHI." *Id.* The bolts were manufactured from December 2002 through January 2003, and were delivered to the Project site in January or February 2003. *Id.* Several of the bolts subsequently broke upon installation. *Id.* at 5 ¶ 15.

After some of the bolts broke, the Joint Venture rejected all the bolts and notified SLSB of the failure and rejection. *Id.* SLSB then recalled all the bolts. *Id.* at 5 ¶ 16. SLSB stated that it had discovered that certain aspects of the "hot galvanizing process" used in manufacturing the bolts were not performed properly and, as a result, the bolts were defective. *Id.* at 5–6 ¶ 16. The Joint Venture then notified IHI that damages for removal, replacement and delays in the project would be greater than $640,000. *Id.* at 6 ¶ 19. The Joint Venture has assessed IHI more than $640,000 in backcharges. *Id.*

## B

Platte filed the original complaint in this action on June 26, 2003, naming IHI, SLSB, Park–Ohio Structural Hardware (Park–Ohio) and FCI Constructors (FCI) as defendants. Doc # 1. Platte filed its first amended complaint on August 11, 2003. Doc # 7. On September 2, 2003, IHI filed a cross-claim against SLSB, FCI and Park–Ohio. Doc # 18. IHI filed an amended cross-claim on October 1, 2003. Doc # 49.

Among other things, the amended cross-claim alleged causes of action against SLSB for breach of third party beneficiary contract, contractual indemnity, negligence and equitable indemnity. IHI Am Cross–Claim at 7–9 ¶¶ 21–39. IHI also included a prayer for attorney fees. *Id.* at Prayer, 10 ¶ 3. SLSB filed a motion to dismiss IHI's negligence cross-claim and a motion to strike IHI's prayer for attorney fees. Docs. ## 72–74. In connection with these motions, the court must consider two issues: (1) whether IHI's negligence cross-claim against SLSB should be dismissed; and (2) whether IHI's prayer for attorney fees should be stricken.

## II

### A

FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). FRCP 8(a), which states that plaintiff's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," provides the standard for judging whether such a cognizable claim exists. *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir.2001). This standard is a liberal one that does not require plaintiff to set forth all the factual details of its claim; rather, all that the standard requires is that plaintiff give defendant fair notice of the claim and the grounds for making that claim. *Leatherman v. Tarrant County Narcotics Intell. & Coord. Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). To this end, plaintiff's complaint should set forth "either direct or inferential allegations with respect to all the material elements of the claim". *Wittstock v. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir.2003).

■ In federal diversity actions, the court must look to state law to determine whether the claim exists, but the manner in which such claims are raised is still governed by federal standards. Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure before Trial* § 8:23 (Rutter Group 2003); see also *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (finding that procedural requirements in federal court are governed by federal law); *Johnson v. Hondo, Inc.,* 125 F.3d 408, 417 (7th Cir.1997) (noting that pleading requirements in the federal courts are governed by federal rules and not by state rules); *Taylor v. United States,* 821 F.2d 1428, 1432 (9th Cir.1987) (finding that, despite the fact that state substantive law governs in suits under the Federal Tort Claims Act, the FRCP determine the manner and time in which affirmative defenses may be raised). Thus, the court should examine a complaint in such actions to determine whether plaintiff has pleaded direct or inferential allegations with respect to all material elements of the claim, as such claim is defined under state law.

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Hughes v. Rowe,* 449

U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); see also *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. All material allegations in the complaint must be taken as true and construed in the light most favorable to plaintiff. See *In re Silicon Graphics Inc. Sec. Lit.,* 183 F.3d 970, 980 n. 10 (9th Cir.1999). Even if the court dismisses the complaint, "leave to amend should be granted unless * * * the pleading could not possibly be cured by the allegation of other facts." *United States v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1052 (9th Cir.2001).

B

In its motion to dismiss, SLSB contends that IHI's negligence cross-claim should be dismissed for two reasons: (1) IHI's negligence claim is premised on SLSB's alleged failure to perform contractual obligations; and (2) IHI has sustained only economic loss. See Memo Mot Dism (Doc # 73) at 5:1–8:14. SLSB's arguments are based in large part upon the contention that, at bottom, this is a contract case and not a tort case.

■ California courts have drawn a distinction between the types of damages recoverable in tort and those recoverable in contract. In *Seely,* the California Supreme Court discussed the types of damages available in products liability actions brought under a strict liability tort theory and concluded that a consumer could not recover against a manufacturer for economic loss caused by the product. *Seely,* 63 Cal.2d at 18, 45 Cal.Rptr. 17, 403 P.2d 145. The *Seely* court also remarked that "[e]ven in actions for negligence, a manufacturer's liability is limited to damages for physical injuries[,] and there is no recovery for economic loss alone." *Id.;* see also *North American Chemical Co. v. Los Angeles Cty. Superior Ct.,* 59 Cal.App.4th 764, 779, 69 Cal.Rptr.2d 466 (1997) (noting the application of *Seely* in negligence actions

by California appellate courts). In a recent case involving homeowners' negligence claims against a manufacturer of component parts used in building the homes, a California appellate court applied the rule to uphold the trial court's decision to exclude evidence of economic damages. *Casey v. Overhead Door Corp.,* 74 Cal. App.4th 112, 123–24, 87 Cal.Rptr.2d 603 (1999), overruled on other grounds by *Jimenez v. San Diego Cty Superior Ct.,* 29 Cal.4th 473, 484, 127 Cal.Rptr.2d 614, 58 P.3d 450 (2002). The usual practice in California courts, therefore, is to preclude recovery in negligence actions based on a defective product unless the product has caused personal injury or physical damage to property. *Sacramento Regional Transit Dist. v. Grumman Flxible,* 158 Cal. App.3d 289, 293, 204 Cal.Rptr. 736 (1984); see *Aas v. San Diego Cty. Superior Ct.,* 24 Cal.4th 627, 641, 101 Cal.Rptr.2d 718, 12 P.3d 1125 (2000).

Despite the general rule regarding economic loss, California law recognizes a limited exception. The California Supreme Court has "held that a defendant's negligent performance of a contractual obligation resulting in damage to the property or economic interests of a person not in privity [can] support recovery if the defendant was under a duty to protect those interests." *Aas,* 24 Cal.4th at 643–44, 101 Cal.Rptr.2d 718, 12 P.3d 1125 (citing *Biakanja v. Irving,* 49 Cal.2d 647, 320 P.2d 16 (1958)). This exception was first articulated in *Biakanja,* a case in which the state supreme court held that a notary public was under a duty to exercise due care to protect a will's devisee, despite the absence of privity between the notary public and the devisee. *Biakanja,* 49 Cal.2d at 648, 320 P.2d 16. The exception was further clarified in *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979), which articulated a six-factor test to determine whether such an extra-con-

tractual duty exists. When the *J'Aire* test is met, the defendant is deemed to have a "special relationship" with the plaintiff and may be liable to the plaintiff in negligence for economic damages. *J'Aire*, 24 Cal.3d at 804–05, 157 Cal.Rptr. 407, 598 P.2d 60.

SLSB argues that *J'Aire* has no application to the instant case. First, SLSB contends that *J'Aire* only applies when the plaintiff is not in privity with the defendant and thus has no recourse against the defendant under a contract theory. Reply Mot Dism (Doc # 113) at 2:13–16. This argument is not convincing. For one thing, IHI is not in direct privity with SLSB and, at most, can claim third-party beneficiary status. Further, as the *Aas* court recognized, California courts frequently have applied *J'Aire* to cases in which privity exists. *Aas*, 24 Cal.4th at 645, 101 Cal.Rptr.2d 718, 12 P.3d 1125. For example, an appellate court recently applied the *J'Aire* analysis in an action for negligent manufacture of dairy equipment, remarking that "the reasoning of *J'Aire* is wholly incompatible with a limitation of the cause of action to those instances in which the plaintiff and defendant are not in privity * * *." *Ott v. Alfa–Laval Agri, Inc.*, 31 Cal.App.4th 1439, 1448, 37 Cal.Rptr.2d 790 (1995).

SLSB next argues that *J'Aire* is inapplicable because this case involves a contract for goods and not for services. Reply Mot Dism at 2:22–3:2. This distinction also lacks merit. SLSB cites no authority—much less California Supreme Court authority—conclusively recognizing a goods/services distinction for purposes of applying *J'Aire*. It is true that some California appellate courts have indicated that a distinction between contracts for goods and contracts for services might be relevant for purposes of applying *J'Aire*. See *North American Chemical*, 59 Cal.App.4th at 783, 69 Cal.Rptr.2d 466 (agreeing with *Ott* that a privity distinction was unwar-

ranted "at least in those cases involving contracts for services"). But the statement in *North American Chemical* is certainly nothing more than dictum. Other California appellate courts have expressly declined to recognize such a distinction in applying *J'Aire*. See *Ales–Peratis Foods Int'l, Inc. v. American Can Co.*, 164 Cal. App.3d 277, 285, 209 Cal.Rptr. 917 (1985) (stating that "neither the language nor the logic of [cases applying *J'Aire* to service contracts] exempts negligent manufacture of a product"). Even the cases SLSB cites involving contracts for goods, although ultimately concluding that no duty exists, still support the notion that *J'Aire* should be applied. See, e g, *Zamora v. Shell Oil Co.*, 55 Cal.App.4th 204, 211–12, 63 Cal. Rptr.2d 762 (1997) (applying *J'Aire* to action for negligent manufacture of plumbing pipes and concluding that *J'Aire* factors did not warrant the imposition of duty); *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal.App.4th 357, 367–69, 62 Cal.Rptr.2d 701 (1997) (same in action for negligent manufacture of bathroom sinks); *Ott*, 31 Cal.App.4th at 1448–1456, 37 Cal. Rptr.2d 790 (same in action for negligent manufacture of dairy equipment).

■ Thus, California law supports the conclusion that the court must apply the *J'Aire* test to determine whether SLSB has a "special relationship" with IHI sufficient to subject SLSB to a negligence claim for IHI's economic loss incurred in connection with the defective bolts. In *J'Aire*, a lessee sued a general contractor for economic damages resulting from the contractor's delay in completing construction on the lessor's premises. *J'Aire*, 157 Cal.Rptr. at 409, 598 P.2d 60. In allowing the lessee to sue the contractor on a theory of negligent interference with prospective economic advantage, the *J'Aire* court determined that the contractor owed the

lessee a duty of care based upon the analysis of six factors:

1. The extent to which the transaction was intended to affect the plaintiff;
2. The foreseeability of harm to the plaintiff;
3. The degree of certainty that the plaintiff suffered injury;
4. The closeness of the connection between the defendant's conduct and the injury suffered;
5. The moral blame attached to the defendant's conduct;
6. The policy of preventing future harm.

*J'Aire*, 24 Cal.3d at 804, 157 Cal.Rptr. 407, 598 P.2d 60. If the application of these factors supports the finding of a duty, then "[r]ecovery for injury to one's economic interests, where it is the foreseeable result of another's want of ordinary care, should not be foreclosed simply because it is the only injury that occurs." *Id.* at 806, 157 Cal.Rptr. 407, 598 P.2d 60.

As noted above, the *J'Aire* factors have been applied in a number of cases involving defective products. In several instances, the court's application of the *J'Aire* factors has led to the conclusion that recovery in negligence for economic damages was appropriate. In *Ales–Peratis*, for example, the court concluded that a can manufacturer had a duty of care to a seafood packager that purchased the cans from an intermediary supplier. *Ales–Peratis*, 164 Cal.App.3d at 280, 209 Cal.Rptr. 917. And in *Chameleon Engineering Corp v. Air Dynamics, Inc*, the appellate court found that a general contractor could hold its subcontractor's supplier liable in tort when the supplier failed to supply essential components necessary to the contract's timely completion. *Chameleon*, 101 Cal.App.3d 418, 420, 161 Cal.Rptr. 463 (1980).

In the instant case, the application of the *J'Aire* factors reveals that IHI's cross-complaint contains sufficient allegations to support its negligence claim. In the California cases applying the *J'Aire* factors, the courts have emphasized "the close connection between [the defendant] and [the plaintiff] and the high degree of foreseeability of economic harm * * *." *Ales–Peratis*, 164 Cal.App.3d at 289, 209 Cal. Rptr. 917. Thus, a critical foundational requirement for finding a special relationship is whether the third-party transaction was intended to affect the plaintiff in a particular way. *Ott*, 31 Cal.App.4th at 1455–56, 37 Cal.Rptr.2d 790. In this regard, California courts have been able to prevent the expansion of manufacturer liability for economic injuries suffered by a retail buyer *at large*, while at the same time allowing a particular party of whom the manufacturer had *specific knowledge* to go forward with a negligence action.

For example, in *Fieldstone*, the court rejected the plaintiff's attempts to create a special relationship under *J'Aire* because "the evidence [did] not suggest the transactions in question were intended to affect Fieldstone or the [other] homeowners in any way particular to [them], as opposed to all potential purchasers of the equipment." *Fieldstone*, 54 Cal.App.4th at 368, 62 Cal.Rptr.2d 701; see also *Zamora*, 55 Cal.App.4th at 212, 63 Cal.Rptr.2d 762 (same); *Ott*, 31 Cal.App.4th at 1455–56, 37 Cal.Rptr.2d 790 (same). By contrast, in *Ales–Peratis*, the court noted that the contract between the defendant manufacturer and the supplier "directly affected [the plaintiff packager's] ability to fully and timely perform its contract with its customer, and [plaintiff] alleged both [the supplier] and [the defendant] knew this." *Ales–Peratis*, 164 Cal.App.3d at 289, 209 Cal.Rptr. 917. Similarly, in *Chameleon*, performance on the contract between the defendant supplier and the subcontractor directly affected the plaintiff general contractor's ability to perform on its own con-

tract, and the plaintiff alleged that the defendant knew about this situation. *Chameleon*, 101 Cal.App.3d at 423, 161 Cal. Rptr. 463.

Taking the allegations in IHI's cross-claim as true, the court finds that IHI has adequately alleged that the contract between SLSB and Platte was intended to affect IHI. IHI alleges that "the [p]urchase [o]rder between Platte and [SLSB] was made for the direct and intended benefit of IHI." IHI Am Cross–Claim at 5 ¶ 14. This is sufficient to distinguish this case from situations in which the defendant manufacturer had no specific knowledge regarding the particular consumer. If SLSB knew that Platte was placing the order at IHI's behest, then there is a much greater justification for imposing a duty on SLSB with respect to IHI than there would be for imposing a duty on SLSB with respect to a consumer whose identity remained unknown. Based on IHI's allegations, the Platte–SLSB transaction can thus be characterized as intended to affect IHI in particular.

This allegation also bears on the second *J'Aire* factor of foreseeability. IHI alleges that a direct and foreseeable result of SLSB's breach of the bolts contract would be the damages IHI incurred in removing and replacing the bolts and the expenses incurred in dealing with the legal consequences of installing the faulty bolts. See IHI Am Cross–Claim at 8 ¶ 35. Assuming the truth of IHI's allegation that SLSB entered into the contract with the intent to benefit IHI, it would be reasonably foreseeable that the breach would create problems for IHI in performing the underlying contract with the Joint Venture. Costs for removal and replacement, as well as expenses incurred to defray liability, are a foreseeable consequence of IHI's inability to perform its own contract. See *Chameleon*, 101 Cal.App.3d at 423, 161 Cal.Rptr. 463.

The third *J'Aire* factor regarding the certainty of injury is also a critical requirement. As the *Aas* court recently held, "the *J'Aire* court [did not] intend[ ] to dispense with the rule that appreciable, nonspeculative, present injury is an essential element of a tort cause of action." *Aas*, 24 Cal.4th at 646, 101 Cal.Rptr.2d 718, 12 P.3d 1125. In *Aas*, a homeowners' association and individual homeowners sought to hold a developer, contractor and subcontractors liable for apparent construction defects in their homes that had not caused any property damage. The California Supreme Court found that the *J'Aire* test did not benefit the plaintiffs because the defects of which they complained had not created certain, nonspeculative damages. Upon the plaintiffs' offer to make damages certain by voluntarily repairing the defects, the court noted that "[t]o say that one's house needs repairs costing a certain amount is not necessarily to say that one has suffered the type of harm cognizable in tort, as opposed to contract." *Aas*, 24 Cal.4th at 646, 101 Cal.Rptr.2d 718, 12 P.3d 1125. Rather, "[c]onstruction defects that have not ripened into property damage, or *at least into involuntary out-of-pocket losses,* do not comfortably fit the definition of 'appreciable harm'—an essential element of a negligence claim." *Id.* (internal quotation and citation omitted; emphasis added).

Here, IHI's negligence claim, while not containing any allegations regarding property damage, nevertheless is significantly different from the claims of the *Aas* plaintiffs. In *Aas*, the plaintiffs had not yet incurred any out-of-pocket losses as a result of the faulty products. In contrast, IHI alleges that it has been assessed backcharges in an amount exceeding $640,000 and that it has incurred significant legal fees in attempting to deflect liability for the defective bolts. Those allegations show that IHI has already suffered

"involuntary out-of-pocket losses" that are certain enough to make a tort remedy appropriate. See *Aas,* 24 Cal.4th at 646, 101 Cal.Rptr.2d 718, 12 P.3d 1125; see also *Chameleon,* 101 Cal.App.3d at 423, 161 Cal.Rptr. 463 (finding the certainty factor supported recognizing a special relationship when plaintiff "was delayed in completing its performance and was assessed liquidated damages and incurred other costs").

■ The other three factors also tend to favor the imposition of duty. With respect to the fourth factor regarding the connection between SLSB's actions and IHI's damages, IHI has pled that it incurred backcharges and fees as the direct result of receiving the allegedly negligently manufactured bolts. See IHI Am Cross–Claim at 8 ¶¶ 34, 35. As such, the connection between SLSB's actions and IHI's damages is patent. See *Chameleon,* 101 Cal. App.3d at 423, 161 Cal.Rptr. 463. The fifth factor of moral blame might also support finding a special relationship. Given that IHI alleges that SLSB entered into the contract to benefit IHI, the allegations support a reasonable inference that SLSB was aware that the bolts were to be used in the construction of a bridge. When a manufacturer knows that its products may be put to a use that will affect the safety and well-being of the public, then further justification for the imposition of liability exists. See *Ales–Peratis,* 164 Cal.App.3d at 289, 209 Cal.Rptr. 917 (noting that imposing a duty would "discourage can manufacturers from shipping defective cans they have reason to know will be used to pack food distributed to the general public"). Finally, the sixth factor respecting prevention of future harm supports finding a special relationship. The general policy in California is to hold persons responsible for injuries caused through "want of ordinary care." *Chameleon,* 101 Cal.App.3d at 423, 161 Cal.Rptr. 463 (citing Cal Civ Code § 1714 ("Every person is responsible for injuries caused by his or her lack of ordinary care.")).

Thus, the application of *J'Aire* supports a finding that, assuming the truth of IHI's allegations, a special relationship exists between SLSB and IHI such that SLSB owed IHI a duty to act with due care. SLSB's final argument in its attempt to secure dismissal of IHI's claim is that, irrespective of duty, IHI has pled a claim for negligence and not negligent interference with prospective advantage. Reply Mot Dism at 6:22–7:4. The *J'Aire* court utilized its six-factor test to allow a claim for negligent interference with prospective economic advantage, rather than a claim for mere negligence. *J'Aire,* 24 Cal.3d at 803–804, 157 Cal.Rptr. 407, 598 P.2d 60.

■ But this is not fatal to IHI's claim. All that is required is that the pleadings give SLSB fair notice of the claim. Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* at § 8:122. "The pleadings need not identify any particular legal theory on which recovery is sought." *Crull v. GEM Ins. Co.,* 58 F.3d 1386, 1391 (9th Cir.1995). California courts have allowed plaintiffs to proceed on a negligent interference theory after satisfaction of the *J'Aire* factors, even when plaintiffs have simply pled negligence. See, e g, *North American Chemical,* 59 Cal.App.4th at 786–87, 69 Cal.Rptr.2d 466; *Chameleon,* 101 Cal.App.3d at 420–21, 423, 161 Cal. Rptr. 463. Despite labeling the claim as a mere "negligence" claim, IHI should nevertheless be allowed to go forward on a negligent interference with prospective advantage theory, given its satisfaction of the *J'Aire* factors. See *North American Chemical,* 59 Cal.App.4th at 786–87, 69 Cal.Rptr.2d 466.

Accordingly, the court DENIES SLSB's motion to dismiss IHI's negligence claim (Docs. ## 72, 73).

## III

### A

 Rule 12(f) allows a court to strike from any pleading any redundant, immaterial, impertinent or scandalous matter. The purpose of a Rule 12(f) motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Courts often regard motions to strike with disfavor, since such motions are frequently used as stalling tactics and since pleadings are of limited importance in federal practice. *Lilley v. Charren*, 936 F.Supp. 708, 713 (N.D.Cal.1996). A motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. *Id.*; *Colaprico v. Sun Microsystems*, 758 F.Supp. 1335, 1339 (N.D.Cal.1991). If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion. *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F Supp 2d 955, 965 (C.D.Cal.2000). Some courts also refuse to grant Rule 12(f) motions unless prejudice would result to the moving party from denial of the motion. *United States v. 729.773 Acres of Land*, 531 F.Supp. 967, 971 (D.Haw.1982). With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party. *2TheMart.com*, 114 F Supp 2d at 965.

### B

 With respect to the instant motion, SLSB challenges IHI's prayer for attorney fees under Rule 12(f) as being immaterial based on SLSB's contention that IHI's cross-claim alleges no basis for the recovery of such fees. Under the "American rule," prevailing litigants in the United States are not ordinarily entitled to collect their attorney fees from the losing party. Instead, each side is generally obligated to pay its own fees. *Douglas v. Los Angeles Herald–Examiner*, 50 Cal.App.3d 449, 467, 123 Cal.Rptr. 683 (1975) (citing *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). In California, attorney fees may only be awarded if authorized by statute or contract. See *Wiley v. Rhodes*, 223 Cal.App.3d 1470, 1474, 273 Cal.Rptr. 279 (1990) (reversing superior court's decision to award attorney fees and costs because plaintiff failed to plead a statutory or contractual basis for such an award). Some courts have stricken baseless prayers for attorney fees under Rule 12(f). See, e g, *California Dep't of Toxic Substances Control v. Alco Pacific*, 217 F Supp 2d 1028, 1046 (C.D.Cal.2002) (striking attorney fee prayer when plaintiffs failed to allege an underlying contribution cross-claim that would have supported the fee award).

 But in California, a party may recover attorney fees not only on a statutory/contractual fee-shifting basis, but also as consequential damages in breach of contract actions when those fees are foreseeable and proximately caused by the breach. *De La Hoya v. Slim's Gun Shop*, 80 Cal.App.3d Supp. 6, 10, 146 Cal.Rptr. 68 (1978). IHI claims that its attorney fees are a foreseeable consequence of SLSB's alleged breach of the contract to which IHI was a third party beneficiary. See Opp Mot Strike (Doc # 105) at 5:14–27; IHI Am Cross–Claim at 7 ¶¶ 21–26. SLSB does not dispute that IHI may recover attorney fees it owes to other parties as consequential damages, but SLSB contends that such damages should not be pled "as a prayer for IHI's own attorney fees." Reply Mot Dism at 3:6–10.

But IHI is not limited to recovering attorney fees it owes to third parties. In

*De La Hoya,* the plaintiff bought a stolen gun from the defendant and subsequently had to defend himself against criminal charges, thus incurring attorney fees. The plaintiff then sued the defendant for breach of contract and sought recovery of his attorney fees as consequential damages from the breach. The court found that "[o]nce the foreseeability of arrest is established, a natural and usual consequence is that [the plaintiff] would incur attorney fees." *De La Hoya,* 146 Cal.Rptr. 68, 80 Cal App 3d Supp at 11. SLSB fails to distinguish *De La Hoya* from the case at bar, and the court's view is that the reasoning is analogous enough to justify refusing to strike the attorney fee prayer. Here, SLSB's negligent manufacture of the bolts made it foreseeable that problems with the Carquinez Bridge project would ensue. A natural and usual consequence of such a problem would be that a contractor like IHI would incur both its own attorney fees and possibly the attorney fees of third parties in attempting to deflect liability for the defective product. Indeed, IHI has alleged in its breach of contract claim against SLSB that IHI has suffered damages "in the form of legal fees and other related expenses incurred in connection with this action" as a foreseeable consequence of SLSB's alleged breach. IHI Am Cross–Claim at 7 ¶ 26. This allegation supports IHI's prayer for attorney fees. See *id.* at 10, Prayer ¶ 3.

Even were this insufficient, IHI would be entitled to pray for attorney fees pursuant to Cal Civ Code § 1021.6. Attorney fees are available under § 1021.6 for implied indemnity claims based on an underlying tort committed by the indemnitor. *Fidelity Mortgage Trustee Service, Inc. v. Ridgegate East Homeowners Assoc.,* 27 Cal.App.4th 503, 512, 32 Cal. Rptr.2d 521 (1994); Cal Civ Code § 1021.6. Some courts—indeed, the Ninth Circuit—have interpreted § 1021.6 as providing for attorney fee recovery *only* if the underly-

ing action against the indemnitor is based in tort. *Los Angeles Nut House v. Holiday Hardware Corp.,* 825 F.2d 1351, 1356 (9th Cir.1987); *Fidelity Mortgage,* 27 Cal. App.4th at 512, 32 Cal.Rptr.2d 521. IHI argues that § 1021.6 may have some application when the underlying action is for breach of contract. See Opp Mot Strike at 6:1–11:6. SLSB counters that this interpretation of § 1021.6 is without support and urges the court to strike the prayer because IHI has pled no viable tort claim. Reply Mot Strike (Doc # 114) at 4:13–8:9. But whether § 1021.6 is applicable when the underlying claim is breach of contract is beside the point. The court has herein concluded that IHI has pled a viable negligence claim against SLSB. One of the bases upon which IHI seeks equitable indemnity from SLSB is SLSB's alleged negligence. See IHI Am Cross–Compl at 9 ¶ 38. IHI has thus alleged that it is entitled to indemnity from SLSB based on an underlying tort committed by SLSB. Accordingly, § 1021.6 provides a proper basis on which IHI might be able to recover its attorney fees.

Moreover, SLSB has failed to show any possible prejudice that would result from allowing the prayer for attorney fees to remain in the IHI's cross-claim. Given the disfavored nature of Rule 12(f) motions, it would be difficult to justify granting such a motion without some showing of prejudice, especially when there are several credible arguments that the attorney fee prayer is material. And as has been said numerous times by other courts, truly irrelevant allegations will likely never be raised again. There are better contexts in which to test the sufficiency of the attorney fee prayer—such as on summary judgment, after discovery has been conducted and the factual basis for the prayer more fully revealed. See, e.g., *Van Schouwen v. The Connaught Corp.,* 782 F.Supp. 1240, 1245 (N.D.Ill.1991). If the prayer is truly un-

meritorious, then SLSB will be free to move for summary judgment on the issue after the factual record has been more fully developed.

In any event, the court must interpret the pleadings in the light most favorable to the nonmoving party and must resolve any doubt in favor of the nonmoving party. Based on the possibility that IHI may be able to recover attorney fees either as consequential damages under its breach of contract claim or on the basis of § 1021.6 under its equitable indemnity claim, it would be premature to strike the prayer for attorney fees from IHI's amended cross-complaint at this time. Accordingly, the court DENIES SLSB's motion to strike.

## IV

For the foregoing reasons, the court DENIES both SLSB's motion to dismiss IHI's negligence claim (Docs # 72, 73) and SLSB's motion to strike IHI's prayer for attorney fees (Doc # 74).

IT IS SO ORDERED.